**Samuel N. T. WONG, Plaintiff-Appellant,**

v.

**Glenn J. TABOR, Defendant-Appellee.**

No. 3–1079A276.

Court of Appeals of Indiana,
Third District.

July 8, 1981.

M. Jean Rawson, Munster, for plaintiff-appellant.

James D. McQuillan, Merrillville, Harry J. Jennings, Spangler, Jennings, Spangler & Dougherty, P. C., Gary, for defendant-appellee.

GARRARD, Judge.

This appeal is from an action for malicious prosecution brought against attorney Glenn J. Tabor by Samuel N. T. Wong, a physician. Tabor had filed suit against Wong on behalf of Mr. and Mrs. William Privett for injuries allegedly sustained by Mrs. Privett as the result of medical malpractice which left her a quadriplegic.[1] In the present case the jury found for Wong and awarded $25,000 damages. However, the trial court set the verdict aside, and this appeal followed.

We initially relate the facts upon which Wong bases his claim for malicious prosecution.[2] The Privetts first sought legal assistance from Tabor approximately one month prior to the expiration of the statute of limitations for bringing a medical malpractice claim. Prior to filing suit, Tabor spoke with his clients, visited the hospital, spoke with hospital personnel, reviewed medical records and conducted legal research. Tabor was advised by Mrs. Privett that Wong had diagnosed her problem as one involving her vertebrae, and that he had referred her to the surgeon, Dr. Kaufman. Tabor was also told by Mr. Privett that hospital personnel had indicated Dr. Wong was present at his wife's surgery. Tabor was additionally aware that Dr. Wong and Dr. Kaufman had previously jointly performed similar surgery on Mr. Privett.

In September 1974, Tabor filed suit within the statutory time limits against a number of physicians, including Wong, and the hospital. During the course of the litigation several physicians were voluntarily dismissed by Tabor and settlements were paid by other defendants. In October 1975, in

1. As a result of headaches she had been suffering, Mrs. Privett underwent a number of tests and a surgical procedure known as an anterior cervical fusion. Upon discharge from the hospital following the surgery, Mrs. Privett was a quadriplegic.

2. Malicious prosecution usually refers to suits brought in response to the wrongful prosecution of a criminal matter. This case might more properly be referred to as one for the "wrongful use of civil proceedings." *See generally, W. Prosser, Law of Torts* 850–53 (4th Ed. 1971). However, since the elements of the two torts are essentially the same, we will refer to the instant case under its more commonly used name of malicious prosecution, as did the court in *Coffey v. Myers* (1882), 84 Ind. 105.

response to the Privetts' failure to answer interrogatories, Wong's attorney requested by letter that Tabor voluntarily dismiss Wong. Having received no response from Tabor, on March 9, 1976, Wong moved to dismiss for failure to comply with an order to answer interrogatories and moved for summary judgment. The motion for summary judgment was set for hearing on April 6, 1976. Prior to the hearing, an attorney from Tabor's office met with Wong's attorney outside the judge's chambers and advised him that there would be no objection to the entry of summary judgment and to have the record merely reflect his presence at the hearing. The cooperation of Tabor's office was also employed to avoid the necessity of Wong's attorney having to attend a hearing on a motion for summary judgment in another county which allowed Wong out of the litigation in a companion case.

Wong subsequently brought suit for malicious prosecution against the Privetts and Tabor, alleging suit was filed against him maliciously and without probable cause. The Privetts were later dismissed from the case, and the claim against Tabor went to trial. As the medical records reveal, Wong did not participate in the surgery. His sole involvement in Mrs. Privett's hospital care was in prescribing a laxative for her. Wong urges Tabor was, or should have been, aware of these facts prior to the initiation of suit and thus lacked probable cause for bringing a claim against Dr. Wong. Alternatively, even if probable cause existed to initially file suit, Wong argues Tabor is liable for continuing the matter once he discovered, or should have discovered, Wong had not been involved in the surgery.

The jury found for Wong and awarded $25,000 in damages. Pursuant to Indiana Rules of Procedure, Trial Rule 50(A)(4), Tabor moved for judgment on the evidence in his motion to correct errors. The trial court granted the motion, setting aside the jury's verdict upon the ground that,

"The evidence at the close of the Plaintiff's case, during the trial of this cause, was without conflict or dispute that the prior proceedings (Privett vs. Wong, et al) were terminated by agreement, with the attorney for Dr. Wong and Defendant herein, Glenn Tabor (as attorney for the Privetts in the prior proceedings); likewise, at the close of all the evidence in this case, during the trial of this cause, the same undisputed evidence was present.

Termination of the prior proceedings by agreement is a bar to the Plaintiff in a malicious prosecution action, as to the element of termination of the prior action in favor of the Plaintiff."

Wong argues the court erred in setting the verdict aside on the ground that the prior proceeding was not terminated in his favor. In response, Tabor urges that not only was the trial court correct in its expressed reason for setting the verdict aside, but alternative grounds exist upon which the trial court's action can be sustained. As preserved by his original motion to correct errors, *see P–M Gas & Wash Co., Inc. v. Smith* (1978), 268 Ind. 297, 375 N.E.2d 592, Tabor argues the trial court should have sustained his motion on the grounds that (1) there was no evidence of lack of probable cause to bring suit against Wong; (2) no evidence as to malice was shown; (3) certain of the instructions were erroneously given; and (4) the damages awarded were excessive. While we conclude the trial court erred in holding the prior action terminated by agreement, we nevertheless affirm since the evidence is insufficient to support a finding that Tabor lacked probable cause to initiate suit against Wong.

This case presents the first opportunity in Indiana for appellate review of a malicious prosecution suit brought against a lawyer by a physician for wrongful initiation of a claim for medical malpractice. The recent influx of medical malpractice litigation has spawned a sentiment in the medical community, as well as the general public, that

the motivation behind the bringing of many malpractice claims may be something less than a desire to obtain compensation for a plaintiff legitimately injured as the result of malpractice. Attorneys, anxious to insure their client is wholly compensated for any injuries sustained, have been criticized for bringing suit against any and all potentially liable parties with little regard for who is actually responsible and whether there is, in fact, liability. In response to this concern, physicians have begun retaliating where they believe they have been unjustifiably harassed by groundless lawsuits. The most common vehicle for such an attack is a countersuit for malicious prosecution against either the original plaintiff or his attorney.[3]

The action of malicious prosecution, which was first developed as a remedy against the unjustified initiation of criminal proceedings, has undergone a slow process of extension into the field of the wrongful initiation of civil suits. *See W. Prosser, Law of Torts* § 120 at 850–53 (4th Ed. 1971). *Compare*, however, *Coffey v. Myers, supra*, n. 1. Designed in the interest of freedom from litigation, the evolution and refinement of the tort reflects its primary purpose: to provide relief where a meritless suit is brought and the plaintiff has an improper motive for initiating it. Note, *A Lawyer's Duty to Reject Groundless Litigation*, 26 *Wayne L.Rev.* 1561, 1568 (1980) (hereinafter referred to as Note, *A Lawyer's Duty*). While the tort of malicious prosecution is not generally favored in our legal system, and thus its requirements are construed strictly against the party bringing the action, *Lyddon v. Shaw* (1978), 56

Ill.App.3d 815, 14 Ill.Dec. 489, 372 N.E.2d 685, it has been recognized as a legitimate vehicle for persons seeking relief from groundless litigation.

In recent years litigants have sought to use the tort against an attorney who allegedly initiated a meritless lawsuit on behalf of his client. While an attorney, like any person using the judicial process for improper purposes, is liable for his actions, it has been argued that a claim of malicious prosecution more properly focuses upon the intent of the original plaintiff, and not the reasonableness of an attorney's performance in screening lawsuits. Note, *A Lawyer's Duty, supra*, at 1568. While the tort assumes litigant responsibility, it was not created for, nor does it contemplate, the need for a remedy designed to deter attorneys from filing baseless lawsuits. *Id.* The clear reluctance of the courts to find attorneys liable for malicious prosecution is evidence of the questioned efficacy of such an action in promoting this end. Nevertheless, it is generally recognized that if any cause of action exists against an attorney, malicious prosecution is essentially the only vehicle available for seeking relief.[4]

■ The essential elements of malicious prosecution are well established. The plaintiff has the burden of proving (a) the defendant instituted, or caused to be instituted, a prosecution against the plaintiff; (b) the defendant acted maliciously in doing so; (c) the prosecution was instituted without probable cause; and (d) the prosecution terminated in the plaintiff's favor. *Satz v. Koplow* (1979), Ind.App., 397 N.E.2d 1082; *Yerkes v. Washington Manufacturing Co.* (1975), 163 Ind.App. 692, 326 N.E.2d 629.

---

3. *See, e. g., Birnbaum, Physicians Counterattack: Liability of Lawyers for Instituting Unjustified Medical Malpractice Actions*, 45 *Fordham L.Rev.* 1003 (1977); Note, *Malicious Prosecution: An Effective Attack on Spurious Medical Malpractice Claims?*, 26 *Case West. Res.L.Rev.* 653 (1976).

4. Courts have summarily rejected any contention that an attorney may be liable to an adverse party under a general negligence theory, *see, e. g., Weaver v. Superior Ct., County of*

*Orange* (1979), 95 Cal.App.3d 166, 156 Cal. Rptr. 745; *Friedman v. Dozorc* (1978), 83 Mich. App. 429, 268 N.W.2d 673; for professional negligence, *Pantone v. Demos* (1978), 59 Ill. App.3d 328, 16 Ill.Dec. 607, 375 N.E.2d 480; or, pursuant to a professional code of ethics, *Berlin v. Nathan* (1978), 64 Ill.App.3d 940, 21 Ill.Dec. 682, 381 N.E.2d 1367; *Spencer v. Burglass* (La. App.1976), 337 So.2d 596.

In the instant case we are faced with the question of the sufficiency of the evidence to fulfill elements (b), (c), and (d) above. As the trial court set the jury verdict aside on the ground that the prior action terminated by settlement, we will initially consider whether Wong met his burden in establishing the previous litigation terminated in his favor.

### I. Termination in Favor of Prior Defendant

■ The trial court granted Tabor's motion for judgment on the evidence. As stated by our Supreme Court in *Huff v. Travelers Indemnity Co.* (1977), 266 Ind. 414, 363 N.E.2d 985, 990:

"When the trial court is considering a motion for judgment on the evidence subsequent to the jury's verdict, it must view only the evidence favorable to the non-moving party and the reasonable inferences to be drawn from that evidence. The trial court may enter judgment only if there is no substantial evidence or reasonable inference to be adduced therefrom to support an essential element of the claim, i. e., the evidence must point unerringly to a conclusion not reached by the jury."

Thus, appellate review of a trial court's entry of judgment on the evidence focuses upon "whether there was evidence of probative value to support each essential element of plaintiff's claim." *Huff, supra,* 363 N.E.2d at 991. If there was, entry of judgment for the defendant was erroneous.

■ Termination in favor of a prior defendant for purposes of a claim of malicious prosecution may occur in a number of ways. As stated in comment on clause (b) of *Restatement (Second) of Torts* § 674 at 444–45 (1977):

"Civil proceedings may be terminated in favor of the person against whom they are brought under the rule stated in Clause (b), (1) by the favorable adjudication of the claim by a competent tribunal, or (2) by the withdrawal of the proceedings by the person bringing them, or (3) by the dismissal of the proceedings because of his failure to prosecute them. A favorable adjudication may be by a judgment rendered by a court after trial or upon demurrer or its equivalent. In either case the adjudication is a sufficient termination of the proceedings, unless an appeal is taken. If an appeal is taken, the proceedings are not terminated until the final disposition of the appeal and of such further proceedings as it may entail."

However, where the original proceeding was ended, without regard to the merits, by agreement or settlement of the parties, no such termination may be availed of for the purpose of an action for malicious prosecution. *W. Prosser, Law of Torts* § 854 (4th Ed. 1971).

Entry of summary judgment in favor of a prior defendant clearly constitutes termination in his favor. We recognize, however, that in reality judgment may be entered in favor of a party for a variety of reasons. We may not ignore the context in which the proceedings were terminated. If entry of summary judgment was merely the formal means of securing the parties' settlement benefits, the judgment cannot form the basis for a malicious prosecution action.

The threshold inquiry thus becomes whether the prior suit between the Privetts and Wong was in fact terminated, as Tabor urges, by compromise or settlement. The evidence reveals that an associate from Tabor's office advised Wong's attorney just prior to the hearing that the Privetts would not contest entry of summary judgment in Wong's favor. However, nothing in the record indicates this conversation involved any compromise or settlement on the part of both parties. While Tabor may have decided to forego his opportunity to contest the summary judgment motion, there is no suggestion this decision was induced by anything more than his choice to do so. There is no evidence the parties had agreed

prior to the hearing to terminate the action with entry of summary judgment merely providing the vehicle for securing their agreement. Thus, while Wong benefitted from Tabor's decision, nothing suggests he bargained *quid pro quo* for such a result.

■ Compromise and settlement implies something more than one party merely advising another as to his decision with regard to a particular matter in dispute. At a minimum, settlement requires some act or process of adjusting one's differences in reaching an agreement over disputed matters. *See, e. g., Black's Law Dictionary* 1538–39 (4th Ed. 1957). The actions presented here in electing to not oppose summary judgment are reasonably susceptible to interpretation as simply constituting a voluntary withdrawal of the Privetts' claim against Dr. Wong. Voluntary abandonment or discontinuance of the claim would be sufficient to constitute termination in favor of the defendant. *Sasse v. Rogers* (1907), 40 Ind.App. 197, 81 N.E. 590.

We conclude the record is wholly lacking as to any evidence of a settlement or agreement to terminate the prior malpractice suit such as to preclude the action. The trial court thus erred in setting the verdict aside upon this ground.

## II. Probable Cause

We next address Tabor's contention that Wong failed to prove lack of probable cause to bring suit for medical malpractice against him.

■ In resolving this issue, we initially focus upon who determines the existence of probable cause. In *Indianapolis Traction & Terminal Co. v. Henby* (1912), 178 Ind. 239, 248, 97 N.E. 313, 317, our Supreme Court stated:

. "In the abstract, probable cause is a pure question of law, but its existence in a given case is a mixed question of law and fact, when one or more of the elementary facts thereof, relied upon, is controverted; in such case, the court must hypothetically state to the jury the material facts which the evidence tends to prove, and positively direct, as to the law, on the assumed state of facts. Where the facts are uncontroverted, the court must determine the existence or nonexistence of probable cause."

Resolving the question of the existence of probable cause thus requires isolation of the factual and legal elements of probable cause. If the facts relied upon are uncontroverted, the question of probable cause is for the court. *Miller v. Willis* (1920), 189 Ind. 664, 128 N.E. 831. Where the facts are in dispute, any conflict in the evidentiary underpinning must be resolved by the trier of fact. However, once that conflict is resolved, whether the facts as found constitute probable cause is again a question of law to be decided by the court. *Duckwall v. Davis* (1924), 194 Ind. 670, 142 N.E. 113.

■ While Indiana courts have frequently addressed the question of probable cause to file suit from a litigant's perspective, we have not developed a standard for reviewing a lawyer's decision to bring suit. In resolving this issue, we must be ever mindful that an attorney's role is to facilitate access to our judicial system for any person seeking legal relief. As such, probable cause is not to be judged merely upon some personal assessment of a claim's merit.[5] It must encompass consideration of the law's desire to fully meet the client's needs.

5. We must occasionally remind ourselves that,
"Dr. Johnson's reply to Boswell upon being asked what he thought of 'supporting a cause which you know to be bad' was: 'Sir, you do not know it to be good or bad till the Judge determines it. I have said that you are to state facts fairly; so that your thinking, or what you call knowing, a cause to be bad, must be from reasoning, must be from supposing your arguments to be weak and inconclusive. But, Sir, that is not enough. An argument which does not convince yourself, may convince the Judge to whom you urge it; and if it does convince him, why, then, Sir, you are wrong, and he is right.'" *2 Boswell, The Life of Johnson* 47–48 (Hill Ed. 1887).

While an attorney is under an ethical duty to avoid suit where its only purpose is to harass or injure,[6] if a balance must be struck between the desire of an adversary to be free from unwarranted accusations and the need of the client for undivided loyalty, the client's interests must be paramount. Mallen, *An Attorney's Liability for Malicious Prosecution, A Misunderstood Tort*, 46 Ins.Couns.J. 407, 414 (1979) (hereinafter referred to as Mallen, *An Attorney's Liability*). As Mallen notes, the very nature of our adversary system of law mandates that the most useful and meaningful tests in this area must be derived from an attorney's ethical and professional obligations to his client. *Id.*

We thus emphasize that any standard of probable cause must insure that the attorney's "duty to his client to present his case vigorously in a manner as favorable to the client as the rules of law and professional ethics will permit" is preserved. *Weaver v. Superior Ct., County of Orange* (1979), 95 Cal.App.3d 166, 180, 156 Cal.Rptr. 745, 752. Mere negligence in asserting a claim is not sufficient to subject an attorney to liability for the bringing of suit. As the court in *Berlin v. Nathan* (1978), 64 Ill.App.3d 940, 21 Ill.Dec. 682, 381 N.E.2d 1367 astutely observed, "To create liability only for negligence, for the bringing of a weak case, would be to destroy his efficacy as advocate of his client and his value to the court, since only the rare attorney would have the courage to take other than the 'easy' case." 381 N.E.2d at 1376, 21 Ill.Dec. at 691.

We recognize that through an effort to protect every citizen's free access to the courts some innocent persons may suffer the publicity, expense and other burdens of defending ill-founded lawsuits. While this is regrettable, the chilling effect that a broad rule of attorney liability would have upon the legal system, and ultimately upon its popular acceptance as a means of dispute resolution, appears to outweigh the value of the protection it would afford to those who might be deemed "innocent" defendants.

With this perspective in mind, we turn to the task of articulating a standard by which an attorney's actions may be judged. A number of courts and commentators have addressed this issue, and we consider it worthwhile to review some of their conclusions.

We begin with the *Restatement (Second) of Torts* (1977).[7] With regard to the wrongful use of civil proceedings, Comment d to § 674 at 453 provides:

"d. Attorneys. An attorney who initiates a civil proceeding on behalf of his client or one who takes any steps in the proceeding is not liable if he has probable cause for his action (see § 675); and even if he has no probable cause and is convinced that his client's claim is unfounded, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim. (See § 676). An attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication if his client so insists after he has explained to the client the nature of the chances."

---

6. *See* DR 7–102 of the A.B.A. Code of Professional Responsibility.

7. *Restatement (Second) of Torts* § 674 states the general Restatement principle as to what constitutes wrongful use of civil proceedings:
"One who takes an active part in the initiation, continuation or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if

(a) he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and
(b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought."

Thus, while the Restatement defines probable cause,[8] it is not dispositive with regard to an attorney's liability for wrongful use of civil proceedings. The crux of attorney liability is premised upon a finding that the attorney acted for some purpose other than aiding his client in securing a proper adjudication of his claim. Although "propriety of purpose" is more closely related to the concept of malice than probable cause, we find the Restatement discussion particularly relevant to our present inquiry.

Section 676 of the Restatement provides that "[t]o subject a person to liability for wrongful civil proceedings, the proceedings must have been initiated or continued primarily for a purpose other than that of securing the proper adjudication of the claim on which they are based." Examples under Comment c to § 676 at 462–63 include circumstances where: the person bringing suit is aware the claim has no merit; the proceedings are begun because of hostility or ill will; the matter is initiated solely for the purpose of depriving the person against whom they are brought of a beneficial use of property; or, suit is brought for the purpose of forcing a settlement which has no relation to the merits of the claim (a "nuisance" suit).

Therefore, consistent with the perspective that an attorney's ethical and professional obligations to his client are of paramount concern, the Restatement would hold an attorney responsible only where he knowingly initiated proceedings for a clearly improper purpose. This standard contemplates something more on the part of an attorney filing suit than a questionable belief as to the merits of a case, or the failure to fully investigate all the facts prior to initiating suit. As long as grounds exist to support the belief that bringing a particular action may help to secure a proper adjudication of a claim, no liability would adhere under the Restatement to an attorney for wrongful use of civil proceedings.

The Restatement language is consistent with that of other commentators. One observer has stated that no action should exist where "some reasonable legal and factual basis lies for asserting the claim." Note, *A Lawyer's Duty, supra,* at 1587. Similarly, it has been suggested that "an attorney may prosecute an action if the claim is neither unlawful nor frivolous." Mallen, *An Attorney's Liability, supra* at 415. We interpret such statements to include protection for the attorney who acknowledges that under existing law the facts do not support liability, but who brings the action in good faith in an effort to secure a change in the law. Certainly, such action on the part of a lawyer should not create liability merely because he fails in his quest.

The most frequently quoted judicial standard is that contained in *Tool Research & Engineering Corp. v. Henigson* (1975), 46 Cal.App.3d 675, 120 Cal.Rptr. 291, 297, in which the court stated:

"An attorney has probable cause to represent a client in litigation when, after a reasonable investigation and industrious search of legal authority, he has an honest belief that his client's claim is tenable in the forum in which it is to be tried. [citations omitted] The test is twofold. The attorney must entertain a subjective belief in that the claim merits litigation and that belief must satisfy an objective standard."

In discussing this test, the court continued:

"Rather [appellants] argue that respondents were required to weigh the evi-

8. Section 675 of the Restatement at 457–58 defines probable cause as follows:

"One who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either

(a) correctly or reasonably believes that under those facts the claim may be valid under the applicable law, or

(b) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information."

dence for and against their clients and to proceed with their representation only if convinced that the trier of fact would accept the evidence in favor of the cause they represented. The argument is groundless. It is the attorney's reasonable and honest belief that his client has a tenable claim that is the attorney's probable cause for representation . . . and not the attorney's conviction that his client must prevail. The attorney is not an insurer to his client's adversary that his client will win in litigation. Rather, he has a duty 'to represent his client zealously . . . [seeking] any lawful objective through legally permissible means . . . [and presenting] for adjudication any lawful claim, issue, or defense.' . . . So long as the attorney does not abuse that duty by prosecuting a claim which a reasonable lawyer would not regard as tenable or by unreasonably neglecting to investigate the facts and law in making his determination to proceed, his client's adversary has no right to assert malicious prosecution against the attorney if the lawyer's efforts prove unsuccessful. [citations omitted]"

120 Cal.Rptr. at 297.

This test correctly focuses upon an attorney's right to pursue any claim he deems meritorious, yet it offers protection to a potential adversary by requiring that the attorney's belief meet some objective standard of reasonableness.

The first level of inquiry presents little problem in terms of definition. If the attorney subjectively believes that the claim merits litigation, the inquiry is satisfied.

The second step is more troublesome. What constitutes a reasonable belief as to the merits of a claim? What objective standard should we apply? Given our deep concern for a litigant's access to the courts and . the concomitant need for capable counsel to facilitate that access, the determination

of reasonableness must not constrain a substantial segment of the bar into bringing only the "sure" case.

The reasonableness of an attorney's belief cannot be judged simply by the case's potential for success. Were we to conclude, for example, that a claim is unreasonable wherever the law would clearly hold for the other side, we could stifle the willingness of a lawyer to challenge established precedent in an effort to change the law. The vitality of our common law system is dependent upon the freedom of attorneys to pursue novel, although potentially unsuccessful, legal theories. If a claim is without merit in the law, or is factually insufficient, our procedural rules provide a basis for expediting the result and crystallizing any issue for appellate review. To that extent the system affords a protection to the "innocent" defendant. Yet we cannot ignore that some citizens, by virtue of their occupation, status, etc., constitute a class of potential defendants such that they are constantly subject to the threat of suit if not actual and recurrent litigation. Indeed, we have been speaking of one such class in exploring the ramifications of the instant litigation upon lawyers, and we are confronted with another in the person of the appellant, a physician.

We conclude that the objective standard which should govern the reasonableness of an attorney's action in instituting litigation for a client is whether the claim merits litigation against the defendant in question on the basis of the facts known to the attorney when suit is commenced.[9] The question is answered by determining that no competent and reasonable attorney familiar with the law of the forum would consider that the claim was worthy of litigation on the basis of the facts known by the attorney who instituted suit.

Turning to the facts in the instant case, we conclude Wong failed to meet his

9. The statement contemplates that the facts known may be insufficient but seeks to avoid speculation on what might be discovered by diligent pursuit. It is also intended to contemplate the time available for investigation.

burden of proving lack of probable cause. The evidence is uncontroverted that Tabor believed he had a potential claim against Wong for his involvement in Mrs. Privett's injuries. Tabor had only thirty days to investigate the matter prior to filing suit and there were a number of potential defendants involved. Not only did Tabor have reason to believe from the hospital records that Wong was involved in Mrs. Privett's post-surgery care, he testified at trial that he had grounds for believing Wong may have been responsible for negligently referring Mrs. Privett to Dr. Kaufman, the surgeon.[10] While a determination as to whether an attorney had an honest belief as to the merits of a claim would be a question of fact, Tabor's assertions that he believed his clients' claims had merit stand uncontradicted.

The second inquiry presents the legal question of whether Tabor's belief that the Privetts' claim was tenable was a reasonable one. Wong urges Tabor was negligent in his investigation of the facts, and thus acted unreasonably in pursuing a claim against him. We find this argument without merit.

■ While we do not condone slack or shoddy preparation and investigation on an attorney's part in bringing suit, where there is some factual basis for bringing a claim, lack of probable cause cannot be based upon a negligent failure to investigate thoroughly. *Berlin v. Nathan* (1978), 64 Ill.App.3d 940, 21 Ill.Dec. 682, 381 N.E.2d 1367; *see also Spencer v. Burglass* (La.App. 1976), 337 So.2d 596, 599.

In order to insure his client's interests were fully protected, Tabor was under a duty to seek any and all possible relief on their behalf. We cannot ignore that he was under a time constraint in investigating the facts. Were we to conclude that liability inures to an attorney where he simply did not know enough about a case at the time of filing, many a successful lawsuit would never have been or never would be filed since frequently an attorney does not get a case until just prior to the prescription date, and the evidence is not fully discovered and developed until after suit is filed. *Spencer v. Burglass*, 337 So.2d at 599.

■ Wong additionally asserts that even if there was probable cause to initiate suit, Tabor is liable for wrongfully continuing the matter once he discovered, or should have discovered, Wong did not participate in Mrs. Privett's surgery or post-surgery care. Wong urges it was readily apparent from the hospital records that he did not participate in Mrs. Privett's surgery, and did nothing more than prescribe a simple laxative during her hospital stay. He argues that Tabor should have been aware of these facts early in the litigation and should have moved to dismiss him from the suit. Given the sparcity of the evidence as to Wong's involvement, he also points to Tabor's failure to file interrogatories or move to depose him as evidence that Tabor unreasonably neglected to investigate the facts in determining to continue the action against him.

Several courts have recognized, as does the Restatement, that liability may arise through the wrongful continuation of a civil proceeding. *See, e. g., Nelson v. Miller* (1980), 227 Kan. 271, 607 P.2d 438; *Friedman v. Dozarc* (1978), 83 Mich.App. 429, 268 N.W.2d 673; *but compare Fee, Parker & Lloyd P. A. v. Sullivan* (Fla.App.1980), 379 So.2d 412.

The cases we have examined do not elaborate on the conduct that will trigger liability, and we will not attempt to do so here. Assuming *arguendo* that liability might be posited for wrongful continuation of litigation, it appears that there are two considerations which should be reflected in any rule of liability.

First the harm is different. Assuming there was probable cause to commence the

---

**10.** There was some evidence indicating Dr. Kaufman had been negligent in the past in performing operations similar to the one performed upon Mrs. Privett.

action, two of the principal "injuries" arising from malicious prosecution—the publicity attending being named a defendant and the necessity of employing counsel to defend oneself—have already occurred and are not a basis for recovering damages.

Secondly, it is at this juncture that the rules of procedure addressing dismissals, summary judgment, etc. are designed to provide aid against unduly protracting the litigation. Moreover, the ethics of an attorney's conduct are subject to action by a disciplinary commission.[11] It therefore appears to us that the considerations upon which liability may be predicated for wrongfully continuing an action when there existed probable cause for its commencement are quite narrow.

Applied to the facts before us we find no basis for liability for wrongfully continuing the litigation. We will not, as Wong urges, premise liability on the nonfeasance of Tabor in failing to conduct prompt and thorough discovery. Furthermore, even if Tabor determined that Wong did not participate in the actual surgery, the question of his potential responsibility in referring Mrs. Privett to Dr. Kaufman remained. The merits of Tabor's legal theories are not the issue, and we cannot conclude that he acted so as to incur liability for wrongful continuation of the suit when he acted as he did.

Since we thus conclude that as a matter of law the evidence failed to establish lack of probable cause to commence the action, the decision of the trial judge setting aside the verdict is affirmed.

HOFFMAN, P. J., and STATON, J., concur.

---

11. For example, Disciplinary Rule DR 7–102 inveighs against a lawyer filing suit, asserting a position, conducting a defense, delaying a trial or taking other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.