**NATIONAL CITY BANK, INDIANA f/k/a Merchants National Bank and Trust Company of Indianapolis, and Philip F. Boberschmidt, Trustee in Bankruptcy of 3200 North Meridian Medical, Limited, Appellants (Plaintiffs Below),**

v.

**Douglass R. SHORTRIDGE, Douglass R. Shortridge, P.C., James R. Martin, and Martin & Beck, an Indiana Partnership, Appellees (Defendants Below).**

No. 33S05–9712–CV–685.

Supreme Court of Indiana.

Dec. 31, 1997.

James A. Knauer, Marcia E. Roan, Kroger, Gardis & Regas, Indianapolis, for Appellant National City Bank, Indiana.

Neil E. Shook, Rubin & Levin, Indianapolis, for Appellant Philip F. Boberschmidt, Trustee in Bankruptcy.

James R. Martin, Martin & Humphrey, Kokomo, Douglass R. Shortridge, Indianapolis, E. Davis Coots, Coots Henke & Wheeler, Carmel, for Appellees.

ON PETITION TO TRANSFER

SHEPARD, Chief Justice.

Lawyers representing a personal injury plaintiff filed a lis pendens notice against real estate owned by the defendants. A trial court ruled they were not entitled to do so and ordered the notice removed. Counsel nevertheless pursued a second lis pendens, the existence of which caused a sale of the property to collapse. These facts make out a case for abuse of process sufficient to survive summary judgment.

## I. Facts

In early 1984, a group known as 3200 North Meridian Medical borrowed money from the former Merchants National Bank and Trust Company of Indianapolis (Merchants) to finance construction of an office building on North Meridian Street in Indianapolis. For collateral, 3200 North Meridian Medical gave Merchants a mortgage on the real estate. Merchants is now known as National City Bank, Indiana.

As the project progressed, roofing laborer Frederick A. Mitcham, while at work on September 14, 1984, was injured from a 28–foot

fall from the structure's roof. The fall rendered him a quadriplegic. Indianapolis attorney Douglass R. Shortridge and Kokomo attorney James R. Martin filed suit in Marion County during December 1984 alleging that 3200 North Meridian Medical was responsible for Mitcham's injuries. The case was later transferred to Johnson County.

While the litigation was pending, 3200 North Meridian Medical conducted negotiations to transfer the property to R & M Properties for $2.05 million. An offer to purchase was accepted on April 22, 1986. The purchase money would have satisfied the debt 3200 North Meridian Medical owed to National City. On March 11, 1986, Shortridge and Martin filed a lis pendens notice against the office building project property and claimed an interest in the property for Mitcham's injuries.

Of course, both the buyer and the lender wished the property to be free and clear of liens. An attorney for 3200 North Meridian Medical wrote Shortridge in November 1986 to demand that he remove the lis pendens notice. When Shortridge refused, 3200 North Meridian Medical filed a motion in the pending personal injury suit seeking to have the lis pendens notice removed. The Court scheduled a hearing on that motion for December 12, 1986.

Two days before the hearing was held, Shortridge and Martin filed a second lawsuit and a second lis pendens notice on Mitcham's behalf in Marion County. They styled this action as a claim for declaratory and injunctive relief on the grounds that the proposed sale was a fraudulent conveyance that was undertaken to "hinder, delay and defraud" Mitcham as a tort claim creditor, (R. at 27). They alleged that 3200 North Meridian Medical would render itself insolvent if it was allowed to convey away its only asset. Shortridge and Martin also alleged that two of the general partners of 3200 North Meridian Medical formed R & M Properties in order to make 3200 North Meridian Medical judgment-proof.

At the hearing on December 12, the Johnson Circuit Court ordered the first lis pendens notice removed. Shortridge and Martin refused to remove the second notice.

National City Bank says that Shortridge's continued refusal to remove the second lis pendens clouded title to the property and caused the entire sale to fail. As a result, 3200 North Meridian Medical defaulted on its obligation to the financial institution. National City Bank obtained a default judgment of $1.65 million against 3200 North Meridian Medical and then took over the property. It was later sold for $846,513, leaving the lender with a deficiency of about $807,000.

In December 1988, National City Bank sued Shortridge and Martin for abuse of process and tortious interference with a contract. It alleged that Mitcham and his attorneys acted negligently and recklessly by filing what the financial institution considered to be two baseless liens and then in refusing to remove the second lien. National City also alleged that Shortridge and Martin had wrongly interfered with the pending sales agreement. Philip F. Boberschmidt, as the trustee in bankruptcy of Meridian Medical, petitioned to be joined with National City as a plaintiff.

During the course of litigation, the second lis pendens notice was dismissed as moot on July 14, 1987.

The trial court hearing the present case entered summary judgment in favor of the defendants. On appeal, appellants have contended that genuine issues of material fact prevent summary judgment. They also contend the trial judge erred in holding that lis pendens was proper for collecting a personal injury claim before judgment. The Indiana Court of Appeals affirmed. *National City Bank v. Shortridge*, 662 N.E.2d 1004 (Ind.Ct. App.1996). We grant transfer.

## II. Standard of Review

The standard of appellate review of a motion for summary judgment is well-known:

> We have stated many times that motions for summary judgment are properly granted only when the pleadings and other matters of record reveal that there is no genuine issue or dispute as to a material fact and that the moving party is entitled to judgment as a matter of law. To determine whether such issues exist, the court must accept as true those facts alleged by

the nonmoving party and resolve all doubts against the moving party. The granting of a motion for summary judgment is not appropriate if the trial court must weigh conflicting evidence to reach a decision, or even if there are conflicting inferences which may be drawn from undisputed facts. "However, despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper where there is no dispute or conflict regarding a fact that is dispositive of the litigation."

*Raymundo v. Hammond Clinic Ass'n,* 449 N.E.2d 276, 280 (Ind.1983) (quoting *Barnd v. Borst,* 431 N.E.2d 161, 164–65 (Ind.Ct.App. 1982) (citations omitted)).

Our appellate courts apply the same standard utilized by the trial court in examining a decision to grant of summary judgment. *Shuamber v. Henderson,* 579 N.E.2d 452 (Ind.1991); *Travel Craft, Inc. v. Wilhelm Mende GmbH & Co.,* 552 N.E.2d 443 (Ind. 1990). The losing party in the trial court must persuade the appellate court that error was committed.

### III. Abuse of Process and Representing Clients

■ One of the central tenets of our system of law is that vigorous and full prosecution of client interests by lawyers promotes the just resolution of claims. At the same time, attorneys should avoid frivolous claims and act with fairness toward opposing party and counsel. Ind.Professional Conduct Rules 3.1, 3.4. It is unethical for an attorney to prosecute in any court a proceeding which is frivolous or has no merit. *Petition of Stillabower,* 246 Ind. 695, 210 N.E.2d 665 (1965); *In re Harvey,* 247 Ind. 23, 210 N.E.2d 859 (1965).

As part and parcel of protecting litigants' interests in legal proceedings, American lawyers acting of behalf of their clients have been given broad protection from those who believe the lawyer has made wrongful use of the judicial process.

Most American courts narrowly confine the reach of liability rules that might provide damages to an injured party against a lawyer because of the lawyer's knowing involvement in wrongful use of the judicial process. The tort theories, which are vari-

ously called abuse of process or malicious prosecution, bristle with technical requirements that are technically applied. Calls by commentators for more generous causes of action against lawyers who file groundless suits have been widely ignored....

... Beyond the technical doctrines, courts have also stated broadly that the role of lawyers in the adversary system requires that they be given a large measure of discretion to press the apparent interests of their clients.

Charles W. Wolfram, Modern Legal Ethics 232–33, 234 (1986).

Indiana law generally follows similar principles. The Court of Appeals emphasized those concepts in a case involving a malicious prosecution claim brought by a physician against the attorney who had earlier filed a medical malpractice claim on behalf of some patients. *Wong v. Tabor,* 422 N.E.2d 1279 (Ind.Ct.App.1981). In that case, the Court of Appeals said:

We recognize that through an effort to protect every citizen's free access to the courts some innocent persons may suffer the publicity, expense and other burdens of defending ill-founded lawsuits. While this is regrettable, the chilling effect that a broad rule of attorney liability would have upon the legal systems, and ultimately upon its popular acceptance as a means of dispute resolution, appears to outweigh the value of the protection it would afford to those who might be deemed "innocent" defendants.

*Id.* at 1286.

■ On the other hand, attorneys have not been clothed with absolute protection from liability for all of the actions they take on behalf of clients. An Indiana statute subjects attorneys to criminal and civil damages if they are "guilty of deceit or collusion, or consents thereto, with intent to deceive a court or judge or a party to an action or judicial proceeding." Ind.Code Ann. § 34–1–60–9 (Michie 1986). Liability will be found to apply to attorneys who are guilty of fraud, collusion or tortious conduct against third parties. *Meier v. Pearlman,* 401 N.E.2d 31 (Ind.Ct.App.1980).

In this case, National City and the trustee in bankruptcy allege the attorneys committed an abuse of process by filing the lis pendens notices and tortiously interfered with a pending sales contract due to their refusal to remove the notices.

■ An abuse of process action "requires a finding of misuse or misapplication of process for an end other than that which it was designed to accomplish. The purpose for which the process is used is the only thing of importance." *Display Fixtures Co. v. R.L. Hatcher, Inc.*, 438 N.E.2d 26, 31 (Ind.Ct.App. 1982). As the U.S. Supreme Court noted in a case reviewing a claim brought under 42 U.S.C § 1983 by an Indiana inmate, "The gravamen of [abuse of process] is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends." *Heck v. Humphrey*, 512 U.S. 477, 486 n. 5, 114 S.Ct. 2364, 2372 n. 5, 129 L.Ed.2d 383 (1994).

■ As for tortious interference, our law says the elements are: existence of a valid and enforceable contract, defendant's knowledge of that contract, defendant's intentional inducement to breach that contract, the absence of justification, and damages resulting from the breach. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind.1994); *Daly v. Nau*, 167 Ind.App. 541, 549 n. 6, 339 N.E.2d 71, 76 n. 6 (1975).

The present lawsuit does not rest on the filing of the first lis pendens notice. Rather, it rests on the action of Shortridge and Martin filing a second notice within days of the time the Johnson Circuit Court would adjudicate the propriety of the first, and their refusal to remove the second after receiving that adverse adjudication. National City and the bankruptcy trustee assert that filing the second notice was an abuse of process, (Appellant's Joint Transfer Br. at 3, 7), which was done with an ulterior motive: to impede the sale of the real estate, (*id.* at 5).

It is apparent that Shortridge and Beck wrongly used the lis pendens procedure.[1] "The purpose of lis pendens or notice of lis pendens is to give effective notice to third persons of pendency of litigation affecting property and its purpose is the same in the context as a mechanic's lien." 54 C.J.S. *Lis Pendens* § 3, at 394 (1987) (footnote omitted). Our lis pendens practices are governed by statute and court rule. Ind.Code Ann. §§ 34-1-4-1 to -9 (Michie 1986 & Supp. 1997); Ind.Trial Rule 63.1.

An Indiana commentator notes that the lis pendens doctrine allows a person with an *in rem* interest in property, which is not otherwise recorded or perfected, to place that claim upon the public record and provide constructive notice to those dealing with the defendant. 4 William Harvey, Indiana Practice § 63.1, at 318 (1991). Dean Harvey further observes:

> If the plaintiff asserts a personal claim against a defendant, even if a claim for breach of contract for services involving realty (e.g. spreading fertilizer on a yard), then lis pendens notice is not appropriate; and the claim remains personal until a judgment lien is entered.

4 *id.* § 63.1B, at 73.

Hornbook law is even more explicit on this point: "The doctrine of lis pendens may not be predicated on an action or suit seeking merely to recover a personal or money judgment unless and until a valid judgment has been secured and made a lien against the property." 54 C.J.S. *Lis Pendens* § 11, at 399 (1987) (footnotes omitted).

Our Court of Appeals made this point in *Curry v. Orwig*, 429 N.E.2d 268 (Ind.Ct.App. 1981). Judge Robertson reviewed the proper uses of lis pendens notice and concluded that the clearest example of "proper lis pendens notice occur[s] in situations where the plaintiff is asserting a claim to the title of real estate under an unrecorded deed or attempting to foreclose an unrecorded mortgage." *Id.* at 273. He also declared that the "opposite end of the spectrum is reached when a plaintiff files a lis pendens notice while asserting a personal claim against a defendant." *Id.* Even cases involving a contract for services on the realty in question have been found to be personal and improper for lis pendens notice, until a judgment lien is

---

**1.** Indiana follows the doctrine of *lis pendens,* which literally means pending suit. 19 I.L.E. *Lis Pendens* § 1 (1959).

entered. *Id.* (citing *Rehnberg v. Minnesota Homes,* 236 Minn. 230, 52 N.W.2d 454 (1952)).

Indiana law takes about the same approach on liens, which might be considered a second cousin to a lis pendens notice. In *Terpstra v. Farmers & Merchants Bank,* 483 N.E.2d 749 (Ind.Ct.App.1985), the court noted that a lien is a claim which a person holds on another's property as security for a debt. Without a debt, the lien cannot exist and the court in this case determined that Terpstra's pre-judgment tort claim is not a debt that would justify filing a lien. *Id.* at 755.

█ Despite abundance of authority that suggests lis pendens is not the proper avenue to secure an interest in a pending personal injury lawsuit, Shortridge and Beck filed one lis pendens and then filed a second one just days before a decision was due on the efficacy of the first lis pendens notice.[2]

This use of lis pendens was so plainly wrong that it reflects on whether Shortridge and Beck were entitled to summary judgment. As the court said in *Wong:*

> We conclude that the objective standard which should govern the reasonableness of an attorney's action in instituting litigation for a client is whether the claim merits litigation against the defendant in question on the basis of the facts known to the attorney when suit is commenced. The question is answered by determining that no competent and reasonable attorney familiar with the law of the forum would consider that the claim was worthy of litigation on the basis of the facts known by the attorney who instituted suit.

*Wong v. Tabor,* 422 N.E.2d 1279, 1288 (Ind. Ct.App.1981).

Following the reasoning outlined in the Restatement (Second) of Torts (1977), the *Wong* Court outlined a useful analytical structure:

> The crux of attorney liability is premised upon a finding that the attorney acted for some purpose other than aiding his client in securing a proper adjudication of his claim. Although "propriety of purpose" is more closely related to the concept of mal-

ice than probable cause, we find the Restatement discussion particularly relevant to our present inquiry.

> Section 676 of the Restatement provides that "[t]o subject a person to liability for wrongful civil proceedings, the proceedings must have been initiated or continued primarily for a purpose other than that of securing the proper adjudication of the claim on which they are based." ... Therefore, consistent with the perspective that an attorney's ethical and professional obligations to his client are of paramount concern, the Restatement would hold an attorney responsible only where he knowingly initiated proceedings for a clearly improper purpose. This standard contemplates something more on the part of an attorney filing suit than a questionable belief as to the merits of a case, or the failure to fully investigate all the facts prior to initiating suit. As long as grounds exist to support the belief that bringing a particular action may help to secure a proper adjudication of a claim, no liability would adhere under the Restatement to an attorney for wrongful use of civil proceedings.

*Wong,* 422 N.E.2d at 1287.

Under the circumstances faced by the injured roofer's attorneys, it is difficult to reconcile the filing of the second lis pendens in Marion County with a desire to secure a *proper* adjudication of the claim, particularly when resolution of the exact issue with respect to the Johnson County lis pendens notice would occur within days. Failing to have a proper justification for filing the second lis pendens raises an inference that Shortridge and Beck may have made an improper use of the legal process. An examination of the motivation behind the decision of the roofer's attorneys to file the second notice is a question of fact that is subject to conflicting inferences. The abuse of process claim is thus not suitable for summary judgment.

It is also apparent that the action of filing the second lis pendens notice clouded the title to the property and likely hampered the

---

**2.** There were, of course, alternatives that Shortridge and Beck might have properly employed, such as pre-judgment attachment.

sale. In this case, it is closely linked to the claim of tortious interference with a contract. Given the connection to the lis pendens notice, summary judgment is also inappropriate for the tortious interference claim.

## IV. Conclusion

The appellants' petition to transfer is granted, the trial court's grant of summary judgment is reversed, and the Court of Appeals opinion is vacated. Ind.Appellate Rule 11(B)(3). This matter is remanded for resolution of the claims on their merits.

SELBY and BOEHM, JJ., concur.

DICKSON, J., dissents with separate opinion.

SULLIVAN, J., believing that transfer in this case should be denied, dissents.

DICKSON, Justice, dissenting.

I disagree with the majority opinion which concludes that National City may proceed with its claims of abuse of process and tortious interference.

The thorough findings of facts and conclusions of law made by the trial court reflect that Shortridge and Martin represented Mitcham, who had suffered devastating injuries in a construction accident while working on the roof of a medical office building. The injuries rendered him a quadriplegic. In pursuing their client's claim for damages against the building owner, 3200 North Meridian Medical, Ltd. ("3200 Ltd."), Shortridge and Martin discovered that 3200 Ltd. was uninsured and was attempting to transfer its only asset, the medical building, to a new partnership consisting of persons who were general partners or lienholders of 3200 Ltd. To protect Mitcham, his lawyers filed a declaratory judgment action and filed lis pendens notices to protect him from a fraudulent conveyance.

Among its conclusions of law, the trial court declared that the actions of Shortridge and Martin "were both procedurally and substantively proper under the circumstances." Record at 689. The judgment continued:

It was proper for Mitcham to protect his rights as a creditor and tort claimant to pursue his statutory rights created by common law and under the fraudulent conveyance act.... Mitcham and the Defen-

dant lawyers had probable cause to bring the action and to protect his rights in this way. This is true as a matter of law irrespective of the Plaintiff's opining that Mitcham should have used another procedure in order to protect his rights.

Record at 689. Affirming the trial court, the Court of Appeals also concluded that, because Mitcham's attorneys "had an arguable basis for the second lis pendens filing, his action in so doing cannot be construed as fraudulent." *National City Bank, Indiana v. Shortridge,* 662 N.E.2d 1004, —— (Ind.Ct. App.1996).

The majority emphasizes that establishing the tort of abuse of process involves proof of "some extortionate perversion of lawfully initiated process to illegitimate ends." Op. at 1252. It notes that a claim of tortious interference requires proof of the absence of justification and other elements. In this case neither the trial court nor the Court of Appeals were offended by the actions of Mitcham's attorneys. To the contrary, these judges found the steps taken by the attorneys to be acceptable and reasonable advocacy. Thus, the actions of Shortridge and Martin were clearly within a range of legitimate ends and justifiable conduct which should preclude National City's claims of abuse of process and intentional interference. I agree with the decision of the Court of Appeals.