

**ATTORNEYS FOR APPELLANTS**

John P. Reed
Jonathan Halm
Abrahamson Reed & Bilse
Hammond, Indiana

William Lazarus
Oakland, California

**ATTORNEYS FOR APPELLEES**

Edward R. Hall
Merrillville, Indiana

Gerald M. Bishop
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

I.A.E., Inc. and William Lazarus,

*Appellants-Defendants/Cross-Appellees,*

v.

Edward R. Hall and Gerald M. Bishop,

*Appellees-Plaintiffs/Cross-Appellants.*

December 22, 2015

Court of Appeals Case No.
45A05-1503-PL-100

Appeal from the Lake Superior Court

The Honorable Calvin D. Hawkins, Special Judge

Cause No. 45D02-1308-PL-32

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellants-Defendants/Cross-Appellees, I.A.E., Inc. (IAE) and William Lazarus (Attorney Lazarus) appeal the trial court's summary judgment in favor of Appellees-Plaintiffs/Cross-Appellants, Edward R. Hall (Attorney Hall) and Gerald M. Bishop (Attorney Bishop), awarding them attorney fees and expenses arising from their representation of IAE in the underlying cause against the Board of Works of the City of Lake Station (Lake Station).[1]

We reverse in part, affirm in part, and remand.

## ISSUES

IAE raises three issues on appeal, which we restate as follows:

(1) Whether the trial court properly awarded attorney fees pursuant to the guidelines in *Galanis v. Lyons & Truitt*, 715 N.E.2d 858 (Ind. 1999);

(2) Whether Attorney Hall is entitled to an abuse of process claim; and

(3) Whether the trial court abused its discretion when it excluded the testimony of IAE's expert witness.

Attorney Lazarus raises one issue on appeal, which we restate as: Whether the trial court erred in denying his motion for partial summary judgment, seeking fees of 10% of IAE's recovery in the underlying cause.

---

[1] We hereby deny, with the same date as this opinion, Appellants' motion for oral argument, Attorney Bishop's motion to strike, and Attorney Hall's motion to file amended cross-appellant's appendix.

On Cross-Appeal, Attorney Hall and Attorney Bishop raise one issue, which we restate as: Whether they are entitled to appellate attorney fees in accordance with Indiana Appellate Rule 66(E).

## FACTS AND PROCEDURAL HISTORY

This is a saga of unremunerated attorneys, a disgruntled client, and the grant of a sizeable damage award. Although the factual and procedural history of this case is labyrinthine, a full recitation of the events leading to this third appeal is necessary to appreciate the tortured and convoluted road this case has travelled.

On May 18, 2000, Ramamurty Talluri (Talluri), the president of IAE, retained the services of Attorney Bishop to represent IAE in a lawsuit against "Lake State [sic], Indiana, for breach of contract, entered into on June 19, 1990." (Appellant's App. p. 575). The retainer contract provided for a contingent fee of "25% of the amount recovered." (Appellant's App. p. 575). Attorney Bishop filed the Complaint, which was assigned to Judge Svetanoff at the superior court of Lake County, sitting in Gary, Indiana. On August 11, 2003, the trial court granted summary judgement to Lake Station. In the letter to his client, Attorney Bishop warned Talluri about the importance of timely appealing the decision and informed Talluri that he did "not intend to automatically appeal the ruling under our current fee arrangement." (Appellant's App. p. 1269). On September 4, 2003, Attorney Bishop proposed a new fee agreement by which he would pursue an appeal "on a contingent fee basis of 50% of any amount recovered." (Appellant's App. p. 1270). After verbally agreeing and after

Attorney Bishop had filed the notice of appeal, Talluri rejected the proposal and contacted Attorney Edward Hall (Attorney Hall) to pursue the appeal on IAE's behalf.

[6] On September 29, 2003, Attorney Hall and Talluri entered into an attorney fee agreement by which Attorney Hall would pursue the "appeal [in] IAE v. City of Lake Station" for a "fee to be 33 1/3% of any recovery," in addition to an hourly fee of $150 (2003 Agreement). (Appellant's App. p. 371). Attorney Bishop withdrew from the case on October 2, 2003, and on October 17, 2003, he filed a notice of attorney lien, requesting payment pursuant to the retainer contract.

[7] On November 3, 2004, after fully briefing the case on appeal and an oral argument before the appellate bench, Attorney Hall secured a reversal of the trial court's grant of summary judgment in favor of Lake Station. *See IAE Inc. Consulting Engineers v. Bd of Works of the City of Lake Station et al.*, No. 45A03-0310-CV-418 (Ind. Ct. App. Nov. 3, 2004). Finding issues of material fact that required resolution by a trier of fact, this court remanded the cause for trial. *See id.* at 2. Our supreme court denied transfer. In preparation for a jury trial, Attorney Hall and Talluri entered into a new contingency fee agreement in August 2005 (2005 Agreement), calling for a fee of 40% of any recovery and asserting that the lien filed by Attorney Bishop was solely IAE's responsibility. On June 16, 2010, after a two-week trial, the jury returned a verdict of $965,300 in favor of IAE. On July 13, 2010, after the jury verdict, Lake Station filed a notice of appeal.

[8]     Wanting to review his responsibility with respect to this post-trial appeal, Attorney Hall attempted to locate the 2005 Agreement. However, the banker's box that should have contained both the 2003 and 2005 Agreements was empty and Attorney Hall did not keep a signed copy of either Agreement. During the first week of July 2010, Attorney Hall met with Talluri to negotiate a new fee agreement to pursue the second appeal, seeking a contingency fee of 45%. Talluri refused to sign the proposed agreement and over the next several weeks, Attorney Hall and Talluri exchanged numerous emails, discussing the terms of the new fee proposal. On July 27, 2010, the attorney for Lake Station contacted Attorney Hall, advising him that Talluri was discussing settlement terms by calling the mayor directly. Upon learning of Talluri's attempt to settle the case, Attorney Hall filed a notice of attorney's lien on July 30, 2010, which was subsequently amended on September 23, 2011. When the email exchange between Attorney Hall and Talluri failed to reach a compromise on a new fee agreement, Attorney Hall filed a complaint for declaratory judgment in small claims court, presided by Judge Michael Pagano (Judge Pagano), requesting a declaration

> A. That the scope of work contemplated by the 2003 [Agreement] has been completed.
>
> B. The parties' action since the Court of Appeals' decision in 2004 have merged the 2005 [A]greement into the 2003 [A]greement and that [A]ttorney Hall is entitled to the 40% for handling the trial when and if recovery is made. Attorney Hall has completed all of his respective duties under the 2005 [A]greement and until the matter is disposed of by the Court of Appeals in this second appeal, he has no further obligation of representation of the defendant absent a new agreement to do so.

C. As the defendant has refused the offer by [A]ttorney Hall for representation in the newest appeal, [Attorney] Hall is not bound to supply further representation without remuneration and has no obligation to pay IAE for its newest lawyer.

D. In the alternative, if this court determines that there was no 2005 [Agreement], plaintiff is entitled to the agreed 33 1/3% contingency fee for handling the first appeal AND a *quantum meruit* claim for his time expended beyond the first appeal at the 2003 contract rate of $150.00/hr.

(Appellant's App. p. 139).

On September 1, 2010, Attorney Lazarus and Talluri entered into a fee agreement to represent IAE in the appeal against Lake Station. The terms of the agreement provided for a contingency fee of "8 percent of Talluri's recovery and an additional 2 percent [] if briefs on the appeal are also filed in the Indiana Supreme Court." (Appellant's App. p. 1349). The agreement also provided that in event of reversal by the Indiana Court of Appeals, Attorney Lazarus would receive 45% if litigation continued. In addition, Attorney Lazarus would receive an hourly rate of $350 to represent Talluri in any proceedings regarding attorney fees to either Attorneys Hall or Bishop.

On December 18, 2010, Judge Pagano conducted a hearing on Attorney Hall's complaint for declaratory judgement. During the hearing, Judge Pagano disclosed that, at an Inns of Court meeting, he and Attorney Hall had discussed the underlying case of IAE against Lake Station prior to the trial before Judge Svetanoff. Clarifying his comment, Judge Pagano noted that he "get[s] calls [] on a regular basis about questions on cases that do not pend before" him. (Appellant's App. p. 1419). After Judge Pagano affirmed that he did not get

paid for this advice, Attorney Lazarus requested a change of judge. Attorney Hall's complaint for declaratory judgment was subsequently assigned to Judge William Davis (Judge Davis). Again, Attorney Lazarus sought a change of judge and the case was assigned to Judge Jeffrey Dywan (Judge Dywan).

[11] On April 4, 2012, Judge Dywan issued his judgment on Attorney Hall's complaint, declaring that

> Counsel advised the [c]ourt that they were in agreement that the only issue for determination by the [c]ourt was whether there was a 2005 contingent fee contract entered into between Attorney Hall and [IAE] and whether that contingent fee agreement is valid and enforceable. The amount of fees to be recovered by Mr. Hall from [IAE] is a matter left for the decision before Honorable Gerald Svetanoff in the underlying litigation in Case No. 45D04-0009-CP-308. It is essential that Judge Svetanoff resolve that issue because there are other attorneys who have claims for attorney fees due from [IAE] arising out of other contingent fee agreements in the underlying litigation.
>
> Having considered the evidence, the [c]ourt now finds that Mr. Hall and [IAE] entered into an Attorney-Client Fee Agreement on September 29, 2003. After the successful appeal in that matter, [Attorney] Hall presented a new contingent fee agreement to Mr. Talluri for [IAE]. Mr. Talluri, on behalf of [IAE], signed that second contingent fee agreement regarding the same matter on August 4, 2005. The second contingent fee agreement substantially changed the terms of the attorney-client relationship regarding fees to be paid the attorney for work in the case.
>
> Because the attorney-client relationship already existed at the time [Attorney] Hall presented the second fee agreement to [IAE], that agreement is presumptively invalid. [Attorney] Hall has not sustained his burden to demonstrate that the second fee agreement was fair and reasonable, that Mr. Talluri was advised of his right to seek the advice of independent counsel, and that Mr. Talluri's execution of that agreement was free of the undue influence of [Attorney] Hall. As a result, the second fee agreement is not enforceable.

IT IS NOW THEREFORE ORDERED, ADJUDGED AND DECREED by the [c]ourt as follows:

1. [Attorney Hall] and [IAE] entered into an Attorney-Client Fee Agreement on September 29, 2003. The agreement is valid and enforceable.

2. The contingent fee agreement of August 4, 2005, prepared by [Attorney] Hall and signed by Mr. Talluri is not enforceable.

3. The amount of fees due Mr. Hall under the September 29, 2003 fee agreement, and the amounts due any of the other attorneys who were employed by Mr. Talluri in connection with the underlying matter in Lake Superior Court, Civil Division Room Four, is left to the determination of the Judge of Civil Division Room Four [Judge Svetanoff].

(Appellant's App. pp. 151-52).

Following Attorney Lazarus' motion to correct error on behalf of IAE on April 30, 2012, Judge Dywan entered an order in the declaratory judgment action on May 17, 2012, denying the motion and clarifying as follows:

> [IAE] entered into two contingent fee agreements with [Attorney] Hall, a contingent fee agreement with [Attorney] Bishop, and a final contingent fee agreement with [Attorney] Lazarus. As stated in *Galanis v. Lyons & Truitt*, 715 N.E.2d 858 (Ind. 1999), [IAE] should only be required to pay one contingent fee. The amount of fees payable to either Attorneys Bishop or Hall in this case, and the effect of those fees due to [Attorney] Lazarus are all to be determined by the Lake Superior Court, Civil Division Room Number Four, applying the rules as set forth in *Galanis*. Civil Division Room Four has the authority and will weigh the efforts expended by the various attorneys in this case in determining what amounts are due to each attorney. [Attorney] Lazarus' arguments regarding set-off and/or [Attorney] Hall's alleged breach of the agreements should be made to the Judge in Civil Division Room Number Four.

(Appellant's App. p. 935).

[13] In compliance with Judge Dywan's directive that the amount of attorney fees needed to be decided by Judge Svetanoff, Attorney Lazarus, on behalf of IAE, filed a motion to decide attorneys' liens based on contract on August, 17, 2012. In its motion, IAE moved to "allocate attorney's fees in this case based upon the express written fee agreements between the parties" and to "award its former [Attorney] Hall a one-third fee out of its recovery from Lake Station, minus the 10 percent fee it owes its current counsel for defending Lake Station's appeal of the judgement entered in IAE's favor in June 2010." (Appellant's App. pp. 77, 78). On September 13, 2012, IAE requested a summary ruling on its motion and on October 9, 2012, Attorney Hall filed a motion to intervene as of right.

[14] On October 24, 2012, Judge Svetanoff conducted a hearing on IAE's motion. During the hearing, Attorney Lazarus, on behalf of IAE, argued that Attorney Bishop's claim for attorney fees was a separate issue which should be filed as a separate cause. IAE and Lake Station also submitted an agreed order, in which both parties stipulated to reduce the jury verdict from $965,300 to $776,400. Attorney Hall objected to this agreed order as he perceived a violation of Indiana Code section 24-4.6-1-104.

[15] On January 14, 2013, as amended by order on February 4, 2013, Judge Svetanoff issued his Order, holding, in pertinent part:

> 7. This dispute between IAE and [Attorney] Hall boils down to one essential issue: whether [Attorney] Hall breached his agreement with IAE by refusing to represent IAE in Lake Station's appeal of the jury verdict, thereby permitting IAE to pay to [Attorney] Hall fees in the

amount of 33 1/3% of the recovery, *less* the amount of fees it is required to pay [Attorney] Lazarus for representing it in Lake Station's appeal after [Attorney] Hall refused to do so.

8. IAE has filed its Motion to Decide Attorneys' Liens Based on Contract requesting that this [c]ourt "allocate attorney's fees in this case based upon the express written fee agreements between the parties." This [c]ourt concurs with IAE that this case *can* be decided on the 2003 Fee Agreement between IAE and [Attorney] Hall without further hearing.

[]

The language of the 2003 Fee Agreement is straightforward and unambiguous: [Attorney] Hall was to be paid 33 1/3% of any recovery. The timing of the 2003 Fee Agreement—that is, after the entry of the Order entering summary judgment in this case—leads this [c]ourt to the inescapable conclusion that [Attorney] Hall was retained to represent IAE in that appeal of the summary judgment entered against it and in the subsequent prosecution of IAE's claim against Lake Station, as well.

[Attorney] Hall complied with his obligations under the 2003 Fee Agreement—he represented IAE in the appeal of the summary judgment Order and in the jury trial held in this cause. There is no mention in the 2003 Fee Agreement of [Attorney] Hall representing IAE in the appeal of a jury verdict. Accordingly, this [c]ourt finds that [Attorney] Hall did *not* breach the 2003 Fee Agreement by insisting that it pertained only to the appeal of the summary judgment entered against IAE and to the subsequent jury trial, but not to Lake Station's appeal of the jury verdict entered at that trial. [Attorney] Hall is therefore entitled to be paid 33 1/3% of IAE's recovery, and [Attorney] Lazarus' fees should be paid in addition to, and not from, [Attorney] Hall's fee.

9. In addition to the issue of the attorney's fee to be paid to Hall, Lake Station has filed its request that this [c]ourt enter judgment in the amount of $776,440.00, which sum includes simple interest in the amount of 8% that has accrued since June 18, 1999. IAE and Lake Station entered into a written agreement providing for this calculation which is dated October 25, 2012.

This [c]ourt has reviewed Lake Station's request and finds that it is consistent with the instructions provided to this [c]ourt by our Court of

Appeals when it remanded this matter back to this [c]ourt for the purpose of recalculating the pre-judgment interest award using simple interest. [] Accordingly, this [c]ourt finds that Lake Station's request should be granted that that judgment should be entered in the amount of $776,440.00

### Judgment

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:**

[]

2. The Motion to Decide Attorneys' Liens Based on Contract filed by [IAE] is granted, in part, as it pertains to the allegation that no further hearing is necessary to decide the issue of attorney's fees in this case with respect to the contractual fees discussed in paragraph 3 below.

3. Pursuant to the September 29, 2003, Attorney-Client Fee Agreement entered into between [Attorney Hall] and [IAE], [Attorney Hall] is entitled to receive from [IAE] an attorney's fee in the sum of 33 1/3% of its recovery in this case. The fee of [Attorney Hall] shall not be reduced by the 10% fee out of IAE's recovery which is due and owing from [IAE] to [Attorney Lazarus], and the fee to [Attorney Lazarus] shall be paid in addition to, and not from, the fee paid to [Attorney Hall].

4. The request by [Lake Station] to enter judgment in the amount of $776,440.00 is granted and this [c]ourt enters judgment in favor of [IAE] and against [Lake Station], in the sum of $776,440.00 in lieu of the prior judgment in this case which is hereby vacated. Post judgement interest of 8% per annum shall accrue from June 16, 2010, which is the date of the prior judgment, to the date of the payment by [Lake Station] of the amended judgment as provided herein.

[]

6. Any other attorney fee issue which remain[s] unresolved by this judgment shall be identified and requested to be determined either in this case or through separate litigation. Such request for the determination herein of other fees claimed by counsel must be filed on or before February 19, 2013, or the same will be denied as untimely. If no timely request is made, then this judgment shall be deemed to be final, since there would be no just cause for delay in entering the same as a final determination of all pending issues before this [c]ourt.

(Appellant's App. pp. 55-58) (internal footnotes omitted). In a separate footnote, Judge Svetanoff indicated that "[b]efore IAE retained [Attorney Hall] it was represented by Attorney [Bishop]. IAE alleges that Attorney Bishop is claiming a right to a portion of [Attorney Hall's] fee. However, the issue of Attorney Bishop's fee, which will ultimately require a factual determination, *Galanis v. Lyons & Truitt*, 715 N.E.2d 858, 862 (Ind. 1999), is not presently before this [c]ourt." (Appellant's App. p. 56).

[16] On February 13, 2013, Attorney Lazarus petitioned the trial court to "award his fees based on his lien arising from his contract with IAE and out of the recovery IAE expects to obtain in this action." (Appellant's App. p. 206). Attorney Bishop complied with Judge Svetanoff's order and filed a separate action for his attorney fees on February 21, 2013, which was assigned to Judge Calvin D. Hawkins (Judge Hawkins). When Judge Svetanoff failed to timely rule on IAE's motion to consolidate Attorney Bishop's separate cause for attorney's fees with the case before him, IAE filed a Trial Rule 53.1 motion with the supreme court, which was granted on August 5, 2013. Our supreme court consolidated both causes and assigned them to Judge Hawkins.

[17] On May 16, 2014, IAE filed its motion for summary judgment, memorandum in support thereof, and designation of evidence, contending that Attorneys Hall and Bishop are not entitled to attorney fees because they abandoned the case "years before it was completed," nor do they have a "cognizable contract claim" or "can they assert a valid equitable claim based on *quantum meruit*." (Appellant's App. p. 329). On June 18, 2014, Attorney Bishop filed his

memorandum in opposition to IAE's motion for summary judgment, as well as a designation of evidence. IAE replied on June 30, 2014.

[18] That same day—June 30, 2014—Attorney Hall filed his response to IAE's motion for summary judgment, as well as his cross-motion for summary judgment as to attorney fees and partial summary judgment as to abuse of process against IAE. Together with his motion, Attorney Hall filed a memorandum in support and designation of evidence. In his cross-motion, Attorney Hall alleged that no genuine issue of material facts exist that the attorney fees can be calculated pursuant to the *Galanis* case. Additionally, in his motion for partial summary judgment on his abuse of process claim, Attorney Hall asserts that during these prolonged proceedings, "IAE embarked on a scorched earth policy of defamatory claims of abuse, mean spiritedness and other equally fallacious claims in an effort to try to get out of paying [Attorney] Hall for his efforts." (Appellant's App. p. 627). As a result, Attorney Hall sought "an award of $86,250 to compensate him for the time spent defending these ridiculous claims." (Appellant's App. p. 627). Within ten days, on July 9, 2014, IAE responded to Attorney Hall's motion and, on December 22, 2014, moved for summary judgment on Attorney Hall's cross-claim for abuse of process against IAE. IAE filed a memorandum in support thereof and a designation of evidence.

[19] On January 14, 2015, Attorney Bishop moved to bar the testimony of IAE's expert witness, Donald Lundberg (Lundberg), because of IAE's untimely expert witness disclosure. Two days later, Attorney Bishop filed his motion for

summary judgment on IAE's counterclaim for breach of contract, together with his memorandum in support and designation of evidence.

[20] On January 22, 2015, Attorney Hall filed his response to IAE's motion for summary judgment and his cross-motion for summary judgment as to all issues, with a memorandum in support thereof and designation of evidence relied upon. The following day, Attorney Lazarus filed his motion for partial summary judgment concerning his right to collect attorney fees on the underlying judgment, with a memorandum in support and designation of evidence, to which Attorney Bishop responded on January 30, 2015.

[21] The following month, on February 6, 2015, numerous filings were recorded. Attorney Bishop responded to Attorney Hall's cross-motion for summary judgment as to all issues; Attorney Lazarus filed a reply to Bishop's response as to Attorney Lazarus' motion for partial summary judgment. IAE filed a response to Attorney Bishop's motion to disqualify Lundberg as its expert witness and a response to Attorney Bishop's motion to disqualify Attorney Lazarus as IAE's attorney. IAE also filed a response to Attorney Hall's cross-motion for summary judgment as to all issues, as well as a reply in support of its motion for summary judgment as to Attorney Hall's abuse of process claim against IAE.

[22] On February 11, 2015, Judge Hawkins conducted a hearing on all pending motions and issued his Order on February 18, as amended on March 2, 2015, concluding, in pertinent part,

(a) That [IAE's] Motion for Summary Judgment is hereby denied.

(b) That [Attorney Hall's] Cross-Motion for Summary Judgment as to all issues is hereby granted;

(c) That [Attorney Lazarus'] Motion for Partial Summary Judgment is hereby denied;

(d) [Attorney Hall's] Motion for Summary Judgment on the abuse of process is granted and [Attorney Hall] is awarded judgment on said claims in the amount of $86,250.

(e) That [Attorney Hall's] Motion for Summary Judgment for Apportionment of Attorney Fees and Expenses is hereby granted, and that apportionment of attorney fees and expenses shall be delineated pursuant to the theory of *quantum meruit* and the Indiana Supreme Court case <u>Galanis v. Lyons & Truit</u>, as follows:

   1. [Attorney Hall] (attorney fees - $406,707.68; expenses - $40,167.74);

   2. [Attorney Bishop] (attorney fees - $25, 812.00; expenses – [$]2,009.15);

   3. [Attorney Lazarus] (attorney fees – [$]13,825.00).

(f) Pursuant to Trial Rule 54(B) the [c]ourt determined there is no just reason for delay and directs the entry of judgment which shall be deemed a final appealable Order.

(Appellant's App. pp. 63-64).

[23] On March 20, 2015, Judge Hawkins issued a second Order, holding

(a) [IAE] and [Attorney Lazarus'] Motion to Stay Proceedings Pending Appeal is GRANTED.

(b) [Attorney Hall's] Motion, joined by [Attorney Bishop], to require [IAE] to post an appeal bond and for immediate payout of funds on deposit [is] DENIED.

. . .

(e) The [c]ourt finds that the Motion of [Attorney Hall] and [Attorney Bishop] to strike the report of [Lundberg] and documents utilizing or

citing to said report is GRANTED. The Clerk is hereby directed to Strike from the record the following documents:

> (1) [IAE's] response to [Attorney Hall's] Motion for Summary Judgment as to all issues;

> (2) [IAE's] response to [Attorney Hall's] Motion for Summary Judgment as to Abuse of Process; and

> (3) The report and affidavit of [Lundberg], filed as an Exhibit to [IAE's] designation in Support of [IAE] and any other documents filed by [IAE] that cite to or refer to the stricken report of [Lundberg].

(f) The [c]ourt GRANTS [Attorney Hall's] Motion to Strike the two (2) trial briefs filed by [IAE] as to the expenses of [Attorney Hall] and [Attorney Bishop]. The Clerk is directed to strike these documents from the record.

(g) The Clerk of the [c]ourt is hereby ordered to certify the record of proceedings to the [c]ourt of [a]ppeals in this cause upon completion of the striking as ordered herein.

(Appellant's App. pp. 66-67).

[24] IAE and Attorney Lazarus appeal; Attorneys Hall and Bishop cross-appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[25] The cavalier indifference exhibited by the attorneys of record as to *res judicata*, the trial rules, and rules of appellate procedure is astounding, and the parties involved have no one but themselves to blame for the flood of litigation that swallowed all civility and legal professionalism. Because of the enormous amount of filings and motions in this case, and the parties' attitude of seemingly appealing all orders, even going back to Judge Dywan's declaratory judgment of April 4, 2012, we first need to determine which orders were timely appealed

and which orders have become final. In other words, we need to delineate the scope of this appeal and the boundaries set by the doctrine of *res judicata*.

[26] The doctrine of *res judicata* bars litigation of a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies. *MicroVote General Corp. v. Ind. Election Comm'n*, 924 N.E.2d 184, 191 (Ind. Ct. App. 2010). The principle behind this doctrine, as well as the doctrine of collateral estoppel, is the prevention of repetitive litigation of the same dispute. *Id*. The following four requirements must be satisfied for a claim to be precluded under the doctrine of res judicata: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies. *Id*.

[27] In his declaratory judgment of April 4, 2012, Judge Dywan decided in an action brought by Attorney Hall against IAE, that the 2003 Agreement entered into between Attorney Hall and IAE was valid and enforceable whereas the 2005 Agreement is not enforceable. Judge Dywan also held that the amount of fees due under the 2003 Agreement and "the amounts due any of the other attorneys who were employed by [Talluri] in connection with the underlying matter" is left to the determination of Judge Svetanoff. (Appellant's App. p. 152). Following IAE's motion to correct error, Judge Dywan clarified his ruling on May 17, 2012, that the amount of fees payable to Attorney Hall and Attorney

Bishop and the effect of those fees on Attorney Lazarus were to be determined by Judge Svetanoff applying the rules as set forth in *Galanis*.

[28] On January 14, 2013, as amended on February 4, 2013, Judge Svetanoff rendered his judgment on the attorney fees determination, concluding that Attorney Hall "did not breach the 2003 fee agreement by insisting that it pertained only to the [first appeal] and to the subsequent jury trial, but not to Lake Station's appeal of the jury verdict entered at that trial." (Appellant's App. p. 56). Accordingly, Judge Svetanoff ruled that Attorney Hall was entitled to be paid pursuant to the 2003 Agreement, *i.e.*, 33 1/3% of IAE's recovery, with Attorney Lazarus' fees paid in addition to Attorney Hall's fees.[2] In the same Order, Judge Svetanoff entered judgement in the amount of $776, 440 pursuant to the settlement between IAE and Lake Station. The judgment declared that requests for "the determination of other fees claimed by counsel must be filed on or before February 19, 2013, or the same will be denied as untimely. If no timely request is made, then this judgment shall be deemed to

---

[2] Although at first glance, Judge Svetanoff's determination of attorney fees in accordance with the written 2003 Agreement entered between Attorney Hall and IAE appears to conflict with Judge Dywan's order that the fees should be calculated pursuant to our supreme court's opinion in *Galanis*, upon further evaluation, the two orders are not contradictory. In *Galanis v. Lyons & Truitt*, 715 N.E.2d 858, 860 (Ind. 1999), our supreme court made the distinction between an attorney who satisfied his obligations under a written fee agreement versus the attorney who is discharged prior to the finality of the cause and whose fee agreement did not provide for the eventuality of payment in case of discharge. Whereas the former is entitled to payment pursuant to the contractual terms, the latter's fees are calculated in accordance with *quantum meruit* or its reasonable value. *See id.* at 861-62. Therefore, as Judge Svetanoff held that Attorney Hall had satisfied his obligations under the 2003 Agreement, he was entitled to 33 1/3% of the recovery, as provided in the fee agreement.

be final[.]" (Appellant's App. p. 58). In a footnote, Judge Svetanoff noted that Attorney Bishop's attorney fee determination was not before its court.

[29] No timely requests were made, and Judge Svetanoff's judgment became final. The parties did not appeal this final judgment. However, we acknowledge that within the deadline imposed by Judge Svetanoff, on February 13, 2013, Attorney Lazarus petitioned the trial court to award him fees based on his lien arising from his contract with IAE and out of the recovery IAE expected to obtain in the underlying suit. Nonetheless, this petition merely represents a request for fees by Attorney Lazarus, a right already recognized in Judge Svetanoff's judgment by declaring that Attorney Lazarus' fees "should be paid" in addition to Attorney Hall's fees. (Appellant's App. p. 56). Accordingly, as this petition did not represent a "determination of *other* fees," it did not bar Judge Svetanoff's judgment from becoming final on February 19, 2013. (Appellant's App. p. 58) (emphasis added).

[30] Lastly, on February 11, 2015, as amended on March 2, 2015, Judge Hawkins issued his order, from which IAE and Attorney Lazarus now appeal. In the order, Judge Hawkins calculated the apportionment of attorney fees and expenses pursuant to the theory of *quantum meruit* and *Galanis*. In addition, Judge Hawkins awarded Attorney Hall a judgment on his abuse of process claim.

[31] Accordingly, based on these orders, we will not address IAE's claims that Attorney Hall is not entitled to attorney fees because he abandoned his

obligations toward Talluri under the 2003 Agreement. In his order of January 14, 2013, as amended on February 4, 2013, Judge Svetanoff conclusively held that Attorney "Hall complied with his obligations under the 2003 Fee Agreement." (Appellant's App. p. 56). As we noted, this judgment became final on February 19, 2013, and became subject to the thirty-day period in which to appeal. *See* Ind. Appellate Rule 9(A). Even though the abandonment argument was not thoroughly developed before Judge Svetanoff, and instead was analyzed before Judge Hawkins, under *res judicata*, a party is not allowed to split a cause of action, pursuing it in a piecemeal fashion and subjecting a defendant to needless multiple suits. *Ind. State Highway Comm'n v. Speidel*, 392 N.E.2d 1172, 1175 (Ind. Ct. App. 1979). As the present claim was within the issues raised before Judge Svetanoff, the claim is now barred by *res judicata*.

[32] Also, we will not address Attorney Hall's cross-appeal of "the February 3, 2013 order of Judge Svetanoff wherein he accepted the stipulation of [Attorney] Lazarus and [Lake Station] to reduce the jury verdict from $965,300 to $776,400." (Hall's Br. p. 24). As the time to appeal this order was within thirty days of February 19, 2013, Attorney Hall's claim is now time-barred. *See* Ind. Appellate Rule 9(A). Similarly, we will not analyze Attorney Hall's allegation that the stipulation to reduce the jury verdict constitutes a fraud on himself and Attorney Bishop, raised for the first time in Attorney Hall's reply brief. *See also Kelly v. Levandoski*, 825 N.E.2d 850, 857 n.2 (Ind. Ct. App. 2005) ("Appellants are not permitted to present new arguments in their reply briefs"), *trans. denied*.

[33] We will now turn to the issues which are properly before us.

## I. *Summary Judgment*

First, we will address whether the trial court properly denied IAE's motion for summary judgment, in which IAE argued for an attorney fees distribution in accordance with the provisions of the fee agreements, but instead the trial court calculated the apportionment of attorney fees and expenses pursuant to the theory of *quantum meruit* and *Galanis*. Additionally, we will review the trial court's denial of Attorney Lazarus' motion for partial summary judgment seeking fees of 10% of the underlying recovery, as provided in his contract with IAE.

### A. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). "A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth . . . , or if the undisputed facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009).

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether

the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id*. When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id*. Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id*.

## B. *Designated Evidence*

[37] Before turning to the merits of this argument, we need to address Attorneys Bishop's and Hall's contention that IAE's entire claim is waived as IAE failed to properly designate evidence supporting its contention on summary judgement. Specifically, Attorney Bishop, with whom Attorney Hall agrees, argues that besides designating documents in their entirety without specific references, IAE also designated affidavits which did not conform to the prerequisite of Indiana Trial Rule 56.

[38] Our supreme court clarified the requirements of Indiana Trial Rule 56(C) for designating evidence in summary judgment proceedings in *Filip v. Block*, 879 N.E.2d 1076, 1080 (Ind. 2008), *reh'g denied*. In *Filip*, the supreme court held:

> Trial Rule 56(C) does compel parties to identify the "parts" of any document upon which they rely. The Rule thus requires sufficient specificity to identify the relevant portions of a document, and so, for example, the designation of an entire deposition is inadequate. Although page numbers are usually sufficient, a more detailed specification, such as supplying line numbers, is preferred.

*Id.* at 1081 (internal quotations omitted). Trial Rule Rule 56(C) does not mandate either the form of designation, *i.e.*, the degree of specificity required, or its placement, *i.e.*, the filing in which the designation is to be made. *Id.* Parties may choose the placement of evidence designation. *Id.* The only requirement as to placement is that the designation clearly identify listed materials as designated evidence in support of or in opposition to the motion for summary judgment. *Id.* If the designation is not in the motion itself, it must be in a paper filed with the motion, and the motion should recite where the designation of evidence is to be found in the accompanying papers. *Id.*

[39] IAE's motion for summary judgment included a memorandum of law in support of the motion, as well as a separate designation of evidence. In its designation, IAE generally listed the documents submitted and relied upon, whereas, the memorandum limits the submitted documents to more specific lines or texts. "If a party designates both specific lines or text and also more general identification of the document containing the specified lines, the court may limit that party to the more specific designation." *Id.* Accordingly, IAE followed the guidelines of *Filip* in submitting evidence in support of its motion for summary judgment.

[40] Attorney Bishop also disputes the admissibility of Talluri's affidavit, designated as Exhibit 1 by IAE, because it "lacks the requisite statement by the affiant that he has personal knowledge of the matters stated therein, as well as the required statement that he is competent to testify as to the matters recited therein." (Bishop's Br. p. 9). Indiana Trial Rule 56(E) contemplates the submission of supporting and opposing affidavits made on personal knowledge and setting forth facts that would be admissible in evidence and that show the affiant is competent to testify thereon.

[41] Talluri's affidavit affirms that, upon being "duly sworn on oath," he is "the President of [IAE] and was its president at all times discussed herein." (Appellant's App. p. 365). This statement—albeit very sparse—meets the requirement of 56(E) as it demonstrated that the paragraphs that followed were made based upon Talluri's position as president of the company. An inference can be made that as president, he would be competent to testify as to the matters that took place during his tenure. Therefore, we conclude that Talluri's affidavit was in compliance with the T.R. 56(E).

C. *Analysis*

1. Attorneys Hall and Bishop

[42] IAE contends that Judge Hawkins erred in denying its motion for summary judgment to award attorney fees according to the attorney fee agreements and instead calculated fees pursuant to the *quantum meruit* doctrine of *Galanis*.

[43]     As we noted before, in his order of January 14, 2013, as amended on February 4, 2013, Judge Svetanoff held that Attorney Hall was entitled to receive an attorney's fee of 33 1/3% of the recovery in the underlying case, pursuant to the 2003 Agreement entered into between Attorney Hall and Talluri. The judgment became final on February 19, 2013, and was not appealed by the parties. Accordingly, as the claim for Attorney Hall's attorney fees had already been litigated by the same parties and decided by Judge Svetanoff, Judge Hawkins was barred from revisiting the claim pursuant to the directives of *res judicata*. *See MicroVote General Corp.*, 924 N.E.2d at 191. Accordingly, as Judge Hawkins recalculated Attorney Halls' attorney fees pursuant to the *quantum meruit* provisions of *Galanis*, we reverse Judge Hawkins' decision denying IAE's motion for summary judgment in that respect and his corresponding grant of Attorney Hall's motion for summary apportionment of attorney fees pursuant to *Galanis*.

[44]     However, with respect to Attorney Bishop's fees, Judge Svetanoff's order only proscribed in a footnote that "Attorney Bishop's fee, which will ultimately require a factual determination [] is not presently before this [c]ourt." (Appellant's App. p. 56). Accordingly, Attorney Bishop's fees were properly before Judge Hawkins, who awarded and calculated these fees in accordance with the pronouncements of *Galanis*. IAE now disputes that Attorney Bishop is entitled to attorney fees because he abandoned the case. We disagree.

[45]     The undisputed designated evidence reflects that Attorney Bishop and Talluri agreed to "representation at a contingent fee of 25% of the amount recovered

whether by settlement o[r] after commencement of trial." (Appellant's App. p. 571). Attorney Bishop affirmed that Talluri "acknowledged that an upward revision of the percentage fee would be expected and appropriate should an appeal become necessary, but refused to commit to a number or discuss the issue further insisting that discussion should take place if an[d] when an appeal became necessary. It was then agreed that the retainer contract would not include my representation on appeal." (Appellant's App. p. 571). Attorney Bishop filed the complaint in the underlying cause and after a summary judgement in favor of Lake Station was rendered, Attorney Bishop contacted Talluri to enter into fee negotiations in case Talluri decided to appeal the negative decision. After the notice of appeal was filed, Talluri rejected Attorney Bishop's fee proposal and contracted with Attorney Hall to pursue the appeal on IAE's behalf. Accordingly, Attorney Bishop did not abandon Talluri; instead, Talluri discharged him.

[46]    "A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." Ind. Professional Conduct Rule 1.16 cmt. Here, Attorney Bishop was discharged before a result was known. As noted by our supreme court in *Galanis*, "[t]he conventional rule is that '[a]n attorney who is employed under a contingent fee contract and discharged prior to the occurrence of the contingency is limited to *quantum meruit* recovery for the reasonable value of the services rendered to the client, and may not recover the full amount of the agreed contingent fee.'" *Galanis*, 715 N.E.2d at 861 (quoting 7 AM.JUR.2D Attorneys at Law § 181 (1997)).

"This rule strikes the proper balance by providing clients freedom in substituting counsel, prohibiting clients from being held responsible for attorney's fees not previously agreed to, and protecting an attorney's right to be compensated for services rendered." *Id*. *Quantum meruit* is an equitable doctrine that prevents unjust enrichment by permitting one to recover the value of the work performed or material furnished if used by another and if valuable. *Id*. (quoting 17A C.J.S. *Contracts* § 440 at 553 (1963)). Arriving at the proper number to place on the predecessor's services is ultimately a factual determination for the trial court. *Id*. at 862.

[47] Attorney Bishop designated evidence establishing the tasks performed on behalf of IAE under his fee agreement, the time expended, and the regular hourly rate for his professional services. Although IAE presents arguments contesting the award of any fees to Attorney Bishop, it did not present any evidence refuting Attorney Bishop's numbers. In his Order, Judge Hawkins awarded him attorney fees of $25,812.00 based on the *Galanis* guidelines, to be paid from Attorney Hall's remuneration. Therefore, we affirm the trial court's grant of summary judgment on Attorney Hall's motion for summary judgment for apportionment of attorney fees with respect to Attorney Bishop's fees.

## 2. Expenses

[48] Next, IAE contends that the trial court erred in awarding expenses to Attorneys Hall and Bishop. Although IAE disputed the award of attorney fees to either Attorney, and even though Attorney Hall included his expenses as a line item

in his motion for summary judgment, IAE never disputed the amount or character of these expenses before the trial court, nor did it designate any evidence to that effect.[3] As IAE now contests the expenses for the first time on appeal, the argument is waived for our review. *Showalter v. Town of Thorntown*, 902 N.E.2d 338, 342 (Ind. Ct. App. 2009) ("A party generally waives appellate review of an issue or argument unless that party presented that issue or argument before the trial court."), *trans. denied*.

### 3. Attorney Lazarus

[49] Lastly, Attorney Lazarus asserts that the trial court erred when it denied his motion for partial summary judgment seeking attorney fees in the amount of 10% of the recovery in the underlying cause pursuant to his contract with IAE. Instead, in his Order, Judge Hawkins awarded Attorney Lazarus attorney fees pursuant to the guidelines in *Galanis* for an amount of $13,825.00.

[50] However, as with Attorney Hall's fees, the calculation of Attorney Lazarus' remuneration was already decided in Judge Svetanoff's order of January 14, 2013, as amended on February 4, 2013. Specifically, Judge Svetanoff held that Attorney Lazarus was entitled to receive a "10% fee out of IAE's recovery" and this fee "shall be paid in addition to, and not from, the fee paid to" Attorney Hall. (Appellant's App. p. 57). Judge Svetanoff's order became final on

---

[3] While IAE refers to IAE Trial Brief as to Hall's Expense Claims, filed on January 20, 2015, in support for its argument that the trial court erred in awarding expenses, this Trial Brief was struck by the trial court by order of March 20, 2015.

February 19, 2013, and was not appealed by the parties. Thus, as the claim for Attorney Lazarus' attorney fees had already been litigated by the same parties and decided by Judge Svetanoff, Judge Hawkins was barred from revisiting the issue pursuant to the directives of *res judicata*. *See MicroVote General Corp.*, 924 N.E.2d at 191. Accordingly, as Judge Hawkins recalculated Attorney Lazarus' attorney fees pursuant to the *quantum meruit* provisions of *Galanis*, we reverse Judge Hawkins' decision denying Attorney Lazarus' motion for partial summary judgment.

## II. *Abuse of Process Award*

[51]    In his Order, Judge Hawkins granted summary judgment on Attorney Hall's abuse of process claim and awarded him $86,250. IAE now contends that the trial court erred in its award of summary judgment because Attorney Hall failed to designate sufficient evidence that could satisfy the elements of the claim.

[52]    A plaintiff claiming abuse of process must show a misuse or misapplication of process for an end other than that which it was designed to accomplish. *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 256 (Ind. Ct. App. 2013), *trans. denied*. The two elements of abuse of process are: (1) ulterior purpose or motives; and (2) a willful use of process not proper in the regular conduct of the proceedings. *Id*. "If a party's acts are procedurally and substantively proper under the circumstances then his intent is irrelevant." *Id.* (quoting *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind. Ct. App. 2005), *trans. denied*). There is no basis for an abuse of process claim if legal process is used to accomplish an

outcome that the process was designated to accomplish. *Id*. "The purpose for which the process is used is the only thing of importance." *Nat'l City Bank of Ind. v. Shortridge* , 689 N.E.2d 1248, 1252 (Ind. 1997), *supplemented at* 691 N.E.2d 1210 (Ind. 1998).

[53] "The gravamen of [abuse of process] is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends." *Id*. (quoting *Heck v. Humphrey*, 512 U.S. 477, 486 n.5, 114 S.Ct. 2364, 2372 n.5, 129 L.Ed.2d 383 (1994)). Unlike a malicious prosecution action, an action for abuse of process does not necessarily require proof that the action was brought without probable cause or that the action terminated in favor of the party alleging abuse of process. *Lindsay v. Jenkins*, 574 N.E.2d 324, 326 (Ind. Ct. App. 1991), *trans. denied.* It does appear, however, that an action's lack of validity can be highly relevant in examining an abuse of process claim. Our supreme court has held that the reasonableness of an attorney's action instituting litigation should be judged by an objective standard and whether "'no competent and reasonable attorney familiar with the law of the forum would consider that the claim was worthy of litigation on the basis of the facts known by the attorney who instituted suit.'" *Shortridge*, 689 N.E.2d at 1253 (quoting *Wong v. Tabor*, 422 N.E.2d 1279, 1288 (Ind. Ct. App. 1981)).[4] There must be evidence that an attorney filed a claim for a purpose other than aiding

---

[4] *Wong* solely addressed a claim of malicious prosecution, while *Shortridge* solely addressed a claim of abuse of process. Still, the *Shortridge* court clearly deemed it appropriate to rely heavily upon *Wong* in establishing the parameters of an abuse of process claim.

his or her client in adjudicating his or her claim. *Id.* Additionally, there must be evidence that the attorney "'knowingly initiated proceedings for a clearly improper purpose,'" which requires more than evidence of a questionable belief as to the merits of a case, or the failure to fully investigate all facts before filing suit. *Id.* (quoting *Wong*, 422 N.E.2d at 1287).

[54] Applying these principles to the present case, Attorney Hall states:

> It is difficult to imagine a clearer example of abuse of process than that of IAE in this case. After suggesting that the 2010 dispute over whether or not either the 2003 or 2005 fee agreement required [Attorney Hall] to handle the second appeal in 2011 under the agreements of 2003 or 2005, it was IAE who then delayed those proceedings for 2 years, so as to allow for [Attorney Lazarus] to handle the second appeal under the guise that he could do so at virtually no costs to IAE, as he claimed that he would be paid by [Attorneys] Hall and or Bishop. If IAE truly believed that the 2003 or 2005 [A]greements required [Attorney Hall] to handle the second appeal, why wouldn't they simply want a judge to decide that issue? After all, [Attorney Hall] stated on the record in both Magistrate Pagano's courtroom and Judge Davis' courtroom that if the judge decided that [Attorney Hall] was required to handle the second appeal for free, that [Attorney Hall] would do so. Yet instead, IAE embarked on a scorched earth policy of defamatory claims of abuse, mean spiritedness and other equally fallacious claims in an effort to try to get out of paying [Attorney Hall] for his efforts. This abuse of process continues even today, with this so called motion for summary judgment on issues that have already been decided, and for which the Indiana Supreme court called unquestionably inappropriate[5]. As

---

[5] In its Order of May 20, 2014, our supreme court stated that "[b]ecause [IAE] seeks an unquestionably inappropriate remedy under the rules and law governing writs of mandamus and prohibition, this original action is DISMISSED." (Appellant's App. p. 880). Seizing upon the "unquestionably inappropriate" language of the supreme court's order, Attorney Hall inserts this language seemingly to support every argument in his brief, in blatant disregard of the proper context in which this statement was issued.

evidenced by [Attorney Hall's] affidavit, [Attorney Hall] has spent 345 hours on these duplicate and spurious claims over the past four years. At his current hourly rate of $250, this totals $86,250.00 in time spent on this witch hunt . . . time which [Attorney Hall] could not spend on income producing cases. Accordingly [Attorney Hall] seeks summary judgment against IAE on the abuse of process claim and seeks an award of $86,250 to compensate him for the time spent defending these ridiculous claims.

(Appellant's App. pp. 626-27). Accordingly, Attorney Hall was required to establish that IAE had an illegitimate purpose in continuing the proceedings after he had sought a declaratory judgment as to whether his attorney fees were governed by either the 2003 or 2005 Agreement. In this regard, Attorney Hall claims that the illegitimate purpose centers on Attorney Lazarus' motivation to forego paying Attorney Hall for his professional services and instead to reap a high fee with minimal work expended.

[55] Besides making generalized statements, Attorney Hall's appellate brief and his motion for summary judgment on this issue fail to direct us to any specifically designated evidence supporting his allegations. The only allegation that is supported with references to the evidence is the amount of his hourly rate and the number of hours spent on "duplicative and spurious claims." (Hall's Br. p. 22). Regardless of these shortcomings, we must affirm the trial court's award of abuse of process claim.

[56] Our own review of the designated evidence indicates that on August 12, 2012, IAE filed a motion before Judge Svetanoff to allocate attorney fees based on the express written fees agreement between the parties. To that end, and despite IAE's abandonment claim, "[f]or the sake of efficiency," IAE requested to award Attorney Hall "one-third fee out of its recovery from Lake Station, minus the 10 percent fee it owes" to Attorney Lazarus. (Appellant's App. pp. 77-78). Following Judge Svetanoff's ruling of January 14, 2013, as amended on February 4, 2013, the attorney fees for Attorney Hall and Attorney Lazarus were conclusively determined in line with IAE's request, as well as the issue that Attorney Hall had satisfied his obligations under the 2003 Agreement. Despite this clear and final pronouncement, IAE, through its attorney, continued to litigate Attorney Hall's attorney fees by now alleging, in a new filing before Judge Hawkins, that Attorney Hall was not entitled to any attorney fees because he had abandoned the case. IAE never sought to have Judge Svetanoff's decision set aside through proper procedural channels.

[57] Judged by an objective standard, "no competent and reasonable attorney familiar with the law of the forum" would re-litigate a claim which had been conclusively decided between the parties in line with the attorney's suggestion. *See Shortridge*, 689 N.E.2d at 1253. Although Attorney Hall points us to no direct evidence that IAE had an improper motive in this continued litigation besides Attorney Hall's own uncited generalizations, "[a]n examination of the motivation behind the decision of the . . . attorney to file its [summary judgement proceeding before Judge Hawkins] is a question of fact that is subject

to conflicting inferences." *Id.* Here, however, IAE's persistent litigation despite Judge Svetanoff's order granting it what it had requested is particularly troubling and indicative of an ulterior motive. More importantly, we cannot ignore that the doctrine of *res judicata* is firmly embedded in our legal tradition, and IAE's blatant disregard of its principles in the case before us must lead to the conclusion that there is no genuine issue of material fact that Attorney Lazarus misused our legal "process for an end other than that which it was designed to accomplish." *Estate of Mayer*, 998 N.E.2d at 256. We affirm the trial court's grant of summary judgment in favor of Attorney Hall on his abuse of process claim.

### III. *Motion to Strike*

[58] On January 14, 2015, Attorney Bishop moved to bar the testimony of Lundberg as expert witness for IAE because Lundberg had not been timely disclosed as an expert. Despite Attorney Bishop's motion, IAE included Lundberg's opinion as an exhibit in its response to Attorney Hall's January 22, 2015 motion for summary judgement as to all issues. In its order of March 20, 2015, Judge Hawkins directed the clerk of the court to strike the Lundberg report, documents utilizing or citing to said report, and IAE's two trial briefs that included IAE's offer to settle Attorney Hall's expenses for a certain amount. IAE now contends that the trial court abused its discretion when it issued its order to strike as it was "overbroad, [and] comparable to imposing default as a discovery sanction[.]" (IAE's Br. p. 44).

[59] A trial court has broad discretion in ruling on a motion to strike. *Norfolk S. Ry. Co. v. Estate v. Wagers*, 833 N.E.2d 93, 100 (Ind. Ct. App. 2005), *trans. denied*. Generally, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Id.* This standard also applies to decisions to admit or exclude expert testimony. *Id.* We reverse a trial court's decision to admit or exclude evidence only if that decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id* at 101. Further, the trial court's decision will not be reversed unless prejudicial error is clearly shown. *Devereux v. Love,* 30 N.E.3d 754, 766 (Ind. Ct. App. 2015), *reh'g denied.*

[60] Without having to decide whether the trial court abused its discretion, we can affirm the trial court's ruling as IAE failed to establish it was prejudiced by the trial court's order. In his letter, Lundberg expressed his opinion on whether Attorneys Hall and Bishop had satisfied the obligations of their respective fee agreements. With respect to Attorney Hall, this issue had been conclusively decided by Judge Svetanoff's order and was *res judicata* in Judge Hawkins' court. In this respect, Lundberg's opinion had become irrelevant. With respect to Attorney Bishop and the documents including settlement offers, IAE omits any allegation of prejudicial error. Accordingly, we decline to reverse the trial court's order to strike.

IV. *Request for Appellate Attorney Fees*

Lastly, both Attorney Hall and Attorney Bishop request to be awarded appellate attorney fees in accordance with Indiana Appellate Rule 66(E). They posit an entitlement to appellate attorney fees because of IAE's "baseless claims" indicating that it "seeks some form of retaliation against its prior counsel." (Hall's Br. p. 29 & Bishop's Br. p. 15).

Indiana Appellate Rule 66(E) provides, in pertinent part, "[t]he Court may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees." Our discretion to award attorney fees under Indiana Appellate Rule 66(E) is limited, however, to instances where an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious. *Helmuth v. Distance Learning Systems, Ind., Inc.*, 837 N.E.2d 1085, 1094 (Ind. Ct. App. 2005). Additionally, while Indiana Appellate Rule 66(E) provides this court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. *Thacker,* 797 N.E.2d at 346.

We have formally categorized claims for appellate attorney fees into "substantive" and "procedural" bad faith claims. *In re Estate of Carnes*, 866 N.E.2d 260, 267 (Ind. Ct. App. 2007). To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are

utterly devoid of all plausibility. *Id.* In other words, substantive bad faith "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Wallace v. Rosen*, 765 N.E.2d 192, 201 (Ind. Ct. App. 2002). On the other hand, procedural bad faith occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. *Potter v. Houston*, 847 N.E.241, 249 (Ind. Ct. App. 2006).

[64] IAE's brief suffers from numerous procedural deficiencies predominantly in its argument section. Although each contention in the argument section "must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied upon," references are either completely omitted or woefully inadequate. *See* Ind. Appellate Rule 46(A)(8)(a). Furthermore, the arguments we deemed reviewable are only summarily supported with case law. On the other hand, it should be pointed out that Attorney Hall's appellate brief suffered from identical deficiencies.

[65] Substantively, all appellate briefs include arguments "utterly devoid of all plausibility." *Estate of Carnes*, 866 N.E.2d at 267. While we agree with certain contentions, we have rejected others. The parties before us continued to re-litigate issues and judgments already conclusively decided. While presenting us with several baseless claims, the parties did not shy away from unfounded accusations and deliberate exaggerations, such as:

> The arguments are, without merit in that they are generally predicated upon fabricated or improperly characterized facts. [Attorney Bishop] has resisted the temptation to once again respond to each, only to fill the pages of his brief with inconsequential argument.

(Hall's Br. p. 13). Although this appeal reflects a degree of bitterness among the parties and counsel, incoherent and illogical tirades of accusations are out of place before an appellate tribunal. At times, the appellate briefs even read like an incoherent stream of consciousness without any proper legal foundation.

Indignation—whether righteous or not—is no substitute for a well-reasoned argument. We remind counsel that "an advocate can present his cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics." *WorldCom Network Serv. Inc. v. Thompson*, 698 N.E.2d 1233, 1237 (Ind. Ct. App. 1998), *trans. denied*. Here, all parties presented us with briefs and arguments woefully unbefitting an appellate advocate; none should be awarded appellate attorney fees.[6]

## CONCLUSION

---

[6] Even though we are only deciding appellate attorney fees, we note that the unnecessary hyperbole already commenced before the trial court:

> After IAE hired its current counsel, it was too late for [Attorney Hall] to insist upon what [Talluri] had previously repeatedly requested of him, and complete the job of obtaining recovery from Lake Station. It's like the old nursery rhyme. Only in this case, Humpty Dumpty threw himself off the wall and shattered his own egg. Now he seeks to blame his elderly client for not putting his shell back together again.

(Appellant's App. p. 1746). We caution counsel that overheated rhetoric is unpersuasive and ill-advised.

Based on the foregoing, we reverse the trial court's grant of summary judgment with respect to Attorney Hall's and Attorney Lazarus' attorney fees based on *res judicata* grounds but affirm the trial court's calculation of Attorney Bishop's attorney fees pursuant to the guidelines in *Galanis* and the trial court's grant of expenses. We affirm the trial court's grant of abuse of process claim; and also conclude that the trial court did not abuse its discretion granting the motion to strike. On Cross-Appeal, we deny appellate attorney fees to Attorney Bishop and Attorney Hall

Affirmed in part, reversed in part, and remanded for further proceedings in light of this opinion.

Brown, J. and Altice, J. concur